1837.

Manhattan Co
v.
Evertson.

---

THE MANHATTAN COMPANY *vs.* EVERTSON and others.

Where a creditor of a fraudulent grantee of real estate takes from him a mortgage on such estate as a further security of the previous debt, but without notice of the fraud, such creditor isnot protected against the prior equity and legal lien of judgment creditors of the fraudulent grantor, whose judgments were recovered subsequent to the fraudulent conveyance but prior to the mortgage.

A party claiming protection as a bona fide purchaser or mortgagee from the fraudulent grantee of real estate, must deny notice of the fraud, although notice thereof is not charged in the complainant's bill.

Where the wife joins with her husband in a fraudulent conveyance to delay and hinder creditors from collecting their debts, her right to dower in the property is extinguished, although the conveyance is declared void as to creditors.

A judgment recovered in the district or circuit court of the United States for the northern or the southern district of the state of New-York is a lien upon lands throughout the state, for the term of ten years from the time of docketing such judgment, in conformity to the local law of the state.

It seems that a judgment in favor of the United States, recovered in one of the federal courts out of the state of New-York, is not a lien upon lands with-

in that state from the docketing of the judgment; although, by the law of the United States, an execution on such judgment may be issued against the defendant's property in any state of the Union.

THE bill in this cause was filed to foreclose a mortgage given to the complainants by G. B. Evertson and his wife in 1824. A decree of foreclosure was entered, and a part of the mortgaged premises lying in the county of Delaware in the southern district of New-York, and in the towns of Galen and Ulysses in the northern district, were sold under the decree. The lands in Delaware county sold for $100; those in Galen for $900; and those in Ulysses for $11,500; the proceeds of which sales, after paying the debt and costs of the complainants, left a surplus of about $8,000. A reference was thereupon directed, according to the provisions of the 136th rule, to ascertain and report the rights of the several defendants in this surplus fund, and the priorities of their several liens thereon. The master decided and reported that J. Emott was entitled to priority of payment out of the fund for a debt of $1500, due from the mortga·gor, secured by a deed of trust, and that he was also entitled to the interest thereon; that after the payment of that debt and interest, Mary Evertson, the widow of the mortgagor, was entitled to her dower in the residue of the fund; that Corlies, Mabbett & Co. who had obtained a judgment against the mortgagor in the supreme court in May, 1827, had a lien upon the fund and were next to be paid the amount due upon their judgment, with interest; that a judgment in the name of Flagler against G. B. Evertson and W. Davis as his surety, which had been paid by Davis and assigned to F. L. Davis as a trustee for him, was the next lien upon the fund, and that the assignee was entitled to payment of the amount due, although it appeared that G. B. Evertson had made an absolute conveyance of lands to W. Davis to secure the payment of that debt; that Smith & Howland and the Dutchess County Bank had liens upon the fund for the amount of their respective judgments against the mortgagor, docketed in May, 1828, and were next in the order of priority; that G. & F. Searls, who had recovered a judgment against the mortgagor in June,

1828, in the circuit court of the United States for the southern district of New-York, had a lien upon the fund for the whole amount of their judgment, although the proceeds of the lands lying in the southern district were much less than the amount due on such judgment, and that they were next to be paid ; and that J. Lockwood, who had subsequently recovered a judgment in the supreme court against G. B. Evertson and J. R. Evertson for about $5,000, was entitled to the residue of the fund.

G. B. Evertson, previous to the recovery of any of the judgments against him, had conveyed the mortgaged premises to J. R. Evertson, who executed a seperate declaration of trust, among other things, to sell the same and after paying the incumbrances thereon to pay J. Emott $1500. And in October, 1828, J. R. Evertson mortgaged the Ulysses lands to Lockwood to secure the payment of the judgment against himself and G. B. Evertson. The counsel for Lockwood and J. R. Evertson, therefore, claimed that Lockwood's mortgage and judgment should be paid next after the $1,-500 to Emott ; and that J. R. Evertson was entitled to the whole of the residue of the fund. This claim, however, was disallowed by the master, on the ground that the conveyances to J. R. Evertson were fraudulent and void as to the creditors of Evertson, some of whom had commenced suits for the recovery of their debts at the time these conveyances were executed. Lockwood and J. R. Evertson thereupon excepted to so much of the report as allowed interest to Emott on his debt of $1500, and as allowed dower to the widow in the residue of the fund. They also took a distinct exception as to the allowance of the claim of each of the judgment creditors, either as a lien upon the fund or as to their respective judgments being entitled to a priority in payment over the judgment and mortgage of Lockwood. A further exception was taken to the allowance of the claim of G. & F. Searls on the ground that it was not presented to the master in time. The vice chancellor, upon the hearing of the exceptions, allowed the same so far as related to the widow's claim of dower in the surplus fund and the claim of Davis under the Flagler judgment. The

1837.

Manhattan Co
v.
Evertson.

residue of the exceptions were disallowed. From the decision of the vice chancellor disallowing their exceptions to the report, except the first relative to the interest on Emott's claim, Lockwood and Evertson appealed to the chancellor. They afterwards, however, stipulated to abandon the appeal as to the tenth exception, which related to the time within which the claim of G. & T. Searls was presented to the master.

The following opinion was delivered by the vice chancellor upon the exceptions.

C. H. Ruggles V. C. Emott is entitled, as stated in the master's report, to $1500 with interest from the 19th February, 1827, the date of the deed of trust. The first exception to the master's report is therefore overruled.

Mrs. Evertson, the widow of G. B. Evertson, is not entitled to dower in the surplus. I am inclined to the opinion that the deeds of the 12th and 19th of February, 1827, from G. B. Evertson and wife to J. R. Evertson was, as between the parties thereto, valid; that the whole title and interest of the grantors passed to the grantee, subject only to the trusts specified and expressed in the declaration of trust executed by J. R. Evertson, and that no beneficial interest reverted or resulted to G. B. Evertson and wife, or either of them, excepting what was so expressed and specified. But if it is otherwise, and all the beneficial interest of the grantors, after the performance of the specified trusts, resulted or reverted to G. B. Evertson, as contended by counsel, still Mrs. Evertson is not entitled to dower in that trust estate. (4 *Kent's Com.* 46. *Banks* v. *Sutton,* 2d ed. 2 *P. Wms.* 700. *Choplin* v. *Choplin,* 3 *id.* 229. 1 *Cruise's Dig.* 488.) The second exception is therefore allowed. The deeds of the 12th and 19th February, 1827, were executed at a time when G. B. Evertson, the grantor, had become embarrassed in his circumstances and the grantee was his son, and no consideration appears to have been paid. Under these circumstances, although the trusts specified in writing are fair and honest and ought to be performed, and the deeds are to be deemed valid to that extent, yet in all other

respects they are inoperative as against the creditors of G. B. Evertson. The judgment therefore mentioned in schedule I of the master's report, except the Flagler judgment, held in the name of T. L. Davis as assignee, which is mentioned hereafter, are liens on the fund, and are to be satisfied in their order.

With respect to the claims of Davis on the judgment in favor of Flagler, the facts are substantially as follows : In 1821, W. Davis became surety for Evertson to Flagler, on a bond for $2800, and for his indemnity he took from Evertson a conveyance, absolute on its face, for 100 acres of land in the town of Clinton and for two village lots on Cannon street in Poughkeepsie. He gave, however, to Evertson a written instrument reciting the circumstances, and promising to reconvey when Evertson should discharge him from the bond. The conveyance was recorded in the book of deeds and not as a mortgage—the defeasance was not recorded at all. Flagler obtained a judgment on his bond against Evertson and Davis on the 18th of February, 1828, and on the first of April of that year this judgment was paid by W. Davis, who took an assignment of it to T. L. Davis as his trustee. Lockwood's judgment was docketed October 30th, 1828, and on the 31st of December, 1830, W. Davis conveyed to J. L. Fonda, by an absolute deed, the lots on Cannon street for $800. What has become of the title to the farm in Clinton does not appear, nor is there any evidence of the value of that farm or of the village lots. There is no evidence of the value of the rents and profits of these lands while they were in the possession of Davis. Nor is there any proof, except what arises on loose inference, that the value of the lands and their profits, even according to Davis's own estimate of them, have been applied to the Flagler debt. Upon these facts I cannot award any part of the fund in question to be paid at present to Davis on his claim. Whether he is entitled to any relief at all is doubtful for the following reasons :

1. When Davis became surety for Evertson to Flagler, he took the land for his indemnity and nothing else ; he took no bond, covenant or engagement, written or verbal, that Ev-

ertson should pay the debt to Flagler, or that Evertson should indemnify him ; it would seem therefore that he relied on the land as an indemnity exclusively, and did not intend to look to Evertson personally.  2. Davis could not sustain an action at law against the representatives of Evertson to recover the money paid by him on the Flagler judgment, because he has sold a part of the land, and thus has put himself in a situation in which he is unable to perform his agreement to reconvey the land on being paid the money. The action of assumpsit is an action governed by equitable principles, and if he is not entitled to maintain an action at law it would seem that he is not entitled to any relief at all. Fonda is a bona fide purchaser, and will be protected in his title.  (*Whitlock* v. *Kane*, 1 *Paige's Rep.* 202.  3 *id.* 438.) 3. Lockwood has doubtless a right to treat the conveyance from Evertson to Davis as a mortgage, and to redeem the Clinton farm, charging Davis with the rents and profits and with the money he received on the sale of the Cannon street lots.   But it does not therefore follow that Davis, after having sold part of the land, is at liberty to do so.   Certainly he cannot be permitted to fix the value of the mortgaged premises by his own estimate, and to state his own balance without judicial inquiry ; there has been no such inquiry in this case.   4. It is apparent that the sale of the Cannon street lots may have prejudiced the interests of the subsequent lien-holders, and embarrassed the redemption for the use of the estate.   The creditors have had no part in fixing the price between Davis and Fonda ; and unless they can charge Davis beyond what the lots sold for, they may have lost the benefit of an enhanced value.   They have also lost the benefit of a competition on the sale, which they would have had on a foreclosure by Davis. I do not mean, however, to decide the question definitely that Davis has no relief ; but 1 have said enough to show that there are at least formidable doubts on that point.   The aspect of the case may perhaps be varied on a more full investigation of the facts. In the present proceedings no sale of the Clinton farm can be directed for the purpose of testing its value, and the parties cannot litigate their rights so fairly as in a bill to fore-

close. It is therefore directed that the sum of $1787,05 be retained in this court in order that W. Davis may file his bill against Lockwood and such other persons as may be interested for the satisfaction of his alleged mortgage out of that money. And in case he should file such bill within ninety days, that sum shall remain in this court until the right shall have been determined. If such bill should not be filed within that time, the clerk is directed to pay the money to Lockwood, who is entitled to that part of the fund which is not exhausted by prior liens. The fifth exception is therefore allowed.

The judgment in favor of G. and T. Searls is declared to be a lien on the fund, on the authority of the case of *Konig* v. *Bayard*, in the U. S. circuit in New-York. (1 *Paine & Duer's Pr*. 289.) If that decision on the construction of the process act is correct, it seems to follow that by the act of congress of the 20th May, 1820, (7 *Laws U. S.* 500,) the lien of judgments in the circuit court of the southern district is extended throughout the whole state.

*S. Cleveland*, for the appellants. The judgment of Searls against Evertson in the second circuit of the U. States was not a lien upon the premises sold, and he is not entitled to any part of the surplus money of the sale. Judgments in the U. States courts are not liens upon land; but if liens on any lands they are not liens upon land without the territorial limits of the circuit; the premises sold were not within the circuit where the judgment was rendered. The conveyances from G. B. Everston and wife to J. R. Evertson vested in the latter the legal estate and fee of the land subject only to the trusts declared in the deed or covenant of J. R. Everston, and those trusts being performed, the deeds to him become absolute and unconditional. Those conveyances not only passed a fee, but all the estate, whether legal or equitable, of the grantors in the premises. Hence judgments against G. B. Evertson subsequent to the conveyances are not liens, and cannot come in for any part of the surplus monies. But in case G. B. Evertson had a residuary interest in the trust, the judgments would not be

liens, as he had not the entire interest; and what interest he had was subject to the other trusts and was uncertain and contingent.

The question of fraud in the conveyances to J. R. Evertson cannot arise on this application for surplus monies. It was expressly admitted on the part of the judgment creditors at the hearings before the master and vice chancellor that the conveyances of the 12th and 19th February, 1827, were executed in good faith by the parties. And parties to a decree claiming a benefit under and through it cannot controvert the facts therein contained, or which are contained in the proceedings upon which the decree is founded. The bill sets forth the conveyances as valid; and as vesting in J. R. Evertson the whole estate in the premises, subject only to the mortgage and trusts declared; and that he thereby became the owner and took possession of the premises. The interest in and lien upon lands contemplated by the rule of this court under which these proceedings were instituted, are legal liens and legal interests consistent with the title claimed by the person in the actual possession, and claiming title at the time of filing the bill and of the decree. If the surplus monies upon a sale are sought through an adverse title, the proceedings must be by an original bill. No fraud actually exists here. The conveyances were made for a valuable consideration. No fraud is proved, and under the circumstances it cannot be presumed. J. Lockwood by virtue of his judgment and mortgage against J. R. Evertson is entitled to receive so much of the surplus monies as will satisfy the mortgage; and J. R. Evertson is entitled to the residue. (*Cruise's Dig.* 58, 64, *tit.* 14. 2 *Inst.* 18, 394. 3 *Co. Rep.* 11, 12. 2 *Saund.* 68, *a. n.* 3 *Black. Com.* 418. 2 *Inst.* 395, 6. 3 *Abr. of Stat.* 249, 355, 6, 7. 2 *Cruise*, 59, &c. 62, 64, 73. 2 *Black. Com.* 420. 1 *Inst.* 420. 3 *Abr. of Stat.* 251. 2 *Atk.* 274. 1 *Kent's Com.* 321, 434, 439. 3 *Wheaton*, 212, 223. 2 *U. S. Laws*, 59, c. 20, § 7. 2 *Idem*, 249, c. 137, § 2. 2 *Idem*, 62, § 13. *Idem*, 65, § 24, 25. *Idem*, 70, § 36. 1 *Paine's Pr.* 289. *Conckling*, 314. *Laws N. Y. Tows & V. ed.* 113, *passed* 19th *March*, 1787. 3 *U. S. Laws*, 479. 4 *Idem*, 679.

6 *Idem,* 269, 270. 7 *U. S. Laws,* 173, 50. 1 *Cond. R.* 173. 7 *U. S. Laws,* 522. 2 *Peters' U. S. R.* 422. 2 *U. S. Laws,* 60.)

*D. D. Field,* for the respondents G. & T. Searls.

*C. Johnson,* for the respondents, except G. & T. Searls. The conveyances to J. R. Evertson were fraudulent and void as against creditors ; and the judgments were all liens on the premises. (1 *Cruise,* 485, § 62. 1 *John. Ch.* 575. 1 *R. Laws,* 72. 3 *Paige,* 421. 2 *John. Ch.* 608.) J. R. Everston has no beneficial interest in the fund, and the appeal as to him must therefore be dismissed. Nor has J. Lockwood any claim upon the fund except as a judgment creditor. Even if the conveyances were bona fide, the resulting trust in favor of G. B. Evertson was liable to execution ; and the fund must be first applied to satisfy the judgments on which executions were issued. (2 *Atk.* 180. 1 *R. S.* 729, § 55, 58, 60, 61, 62. *Prec. in Ch.* 162. 3 *P. Wm.* 252.) Lockwood has affirmed the decree by drawing out money under it, and he cannot now seek to reverse it.

THE CHANCELLOR. Whether the conveyances from G. B. Evertson and wife to J. R. Evertson were absolutely void as against the creditors of the grantors, or operated as a valid transfer of the legal title, subject to a resulting trust in G. B. Evertson for the surplus after paying the mortgage to the complainants, the vice chancellor was right in supposing the widow was not entitled to dower in the surplus. In either case, as between the grantors and grantee, the legal title passed to the latter; and previous to the revised statutes the widow could not be endowed of a mere equity. It is very evident, however, from the facts in the case, that although the legal title passed to J. R. Evertson by the conveyances, they must be considered as void as regards the rights of the creditors of G. B. Evertson, except so far as those rights were protected by the declaration of trust. I think therefore the judgments in the supreme court in favor

of the respondents against G. B. Evertson, some of which were rendered in suits actually pending at the time when these conveyances were executed for the nominal consideration of one dollar, were valid liens upon the mortgaged premises at law as well as in equity. The decision of the vice chancellor was therefore right in declaring that such judgments were a lien upon the fund, and entitled to priority in payment over the judgment subsequently recovered against the grantor and grantee in favor of Lockwood. Neither did the giving of the mortgage to Lockwook by J. R. Evertson upon the Ulysses land, subsequent to the recovery of these judgments, entitle him to a preference in payment. If money or other things of value had been advanced upon the faith of this mortgage, Lockwood might have claimed a preference in payment out of the fund, upon filing an affidavit with the master that he had no notice of the fraud at the time he advanced his money or other property upon the faith of the mortgage. But a party claiming as a bona fide purchaser must deny notice although it is not charged in the bill. And in this case, as the mortgage was given merely as a further security for antecedent debts, the prior equity and legal rights of the other judgment creditors must prevail as against one who cannot protect himself as a bona fide purchaser.

There can be no doubt as to the right of the respondents G. and T. Searls to have their judgment satisfied out of the fund to the extent of the proceeds of the Delaware lands; as the legal title to those lands was bound by the lien of their judgment several months prior to the recovery of the judgment in favor of the appellant. Their right to payment of the residue of their judgment out of the fund depends upon the question whether a judgment in the United States court for the southern district of New-York is a lien upon lands lying within the northern district; which question I will next proceed to consider.

There is no act of congress making a judgment in a court of the United States a lien upon lands either within the general territorial jurisdiction of the court or elsewhere. The existence of such a lien must therefore depend upon the lo-

cal law of the state where the land is situated upon which such a lien is claimed. By the common law a freehold estate in lands could not be reached by a judgment except in the case of an heir upon a judgment on a bond or other specialty. The statute 13 *Edw.* 1, *ch.* 18, which gave the writ of elegit by which one half of the lands of the judgment debtor might be taken in extent, did not, in terms, create a lien so as to prevent a sale by the debtor before execution. But the uniform construction of the statute has been to give such a lien from the entry of the judgment upon all lands which could be reached by this process of the court. And when the British statute, (5 *Geo.* 2, *ch.* 7,) subjected lands in the colonies to sale upon execution, the same principle was adopted in the colony of New-York, and in most of the colonies, as to the lien of the judgment upon real estate which might be thus sold. And this lien was held to extend to all freehold lands which could be reached by an execution out of the court in which the judgment was entered. And where a judgment of an inferior court was removed into the supreme court and there affirmed, such judgment of affirmance became a lien upon all lands of the debtor throughout the state from the time of the docketing of the judgment in the supreme court. Such was the state of the law here, as to the lien of judgments, at the time of the revolution. And the act of the 17th of March, 1787, (1 *Greenl. Laws,* 407,) which was substituted in the place of the British statute subjecting lands to sale on execution, recognizes the existence of such lien in the form of the execution which by the statute is to be issued against the lands of the debtor; as the sheriff is to be directed, in case the personal estate is insufficient to pay the debt and costs, to levy the same of the lands and tenements whereof the judgment debtor was seized on the day when the lands became liable, or at any time afterwards. And that the judgment of a court of the United States is a lien upon real estate of the debtor in accordance with the local law of the place where the land lies, is settled by the supreme court of the United States in the case of *Tayloe* v. *Thompson's lessee,* (5 *Peters' Rep.* 358.) Upon the principle which has been

adopted by congress and by the supreme court of the United States, the legal effect of a judgment as a lien upon the estate of the defendant therein, whether such judgment is recovered in the courts of the state or in a federal court where no direction on the subject has been given by the national legislature, must necessarily be governed by the local law, although the mode of proceeding to enforce such lien where it exists may not be the same in the courts of the states as in the federal court. I have no doubt, therefore, that the lien of a judgment recovered in one of the circuit or district courts of the United States within the limits of this state is a lien upon the lands of the debtor lying within the territorial jurisdiction of such court, for the term of ten years from the docketing of such judgment, in the same manner as the judgment of a court of record in one of the state courts is a lien. And the only difficulty in the present case is in determining whether the lien, according to the true principles of the local law, extends to all lands which may be reached by the execution of the court, or only to such as are within the territorial jurisdiction to which the original process of such court extends. Upon a judgment in favor of the United States, recovered in a federal court in any part of the union, an execution may be issued to the marshal of any other district. And if the lien of the judgment is co-extensive with the right to issue execution, the recovery of a judgment in favor of the United States in the district of Louisiana, if duly docketed, would create a lien upon the lands of the debtor here; so that no purchaser could consider himself safe in purchasing lands within this state until he had searched the records of every federal court throughout the whole extent of the union. As this right to issue execution beyond the limits of the state within which the court is held is not general, but is confined to one particular class of judgments, I am inclined to think the principle of our local law would not be considered as applicable to such a case so as to make a judgment recovered in a federal court in another state a lien upon lands here.

But the act of May, 1826, (*L. U. S.* 1826, *p.* 86,) is general in its provisions, and confines the execution to the lim

its of the state within which the federal court is held.  I
conclude, therefore, though with some hesitation, that a
judgment recovered in the circuit or district court in either
of the districts is a lien upon real property lying in any part
of the state within which such court is held.   Although the
original process of our courts of common pleas is confined
to the limits of the county, if the legislature should think
proper to authorize the issuing of executions upon the judg-
ments of those courts into any county of the state, I am in-
clined to think the principle of our local laws would extend
the liens of judgments thereafter recovered to lands in any
part of the state beyond the bounds of the county in which
the court was held, and to which its jurisdiction as to ori-
ginal process was still confined.   Such appears to have
been the construction given to a statute in the state of Vir-
ginia, permitting an execution upon a judgment in a local
court to be issued to other counties.  (*See* 2 *Call's Rep.*
186; 4 *Hen. & Munf. Rep.* 77.)  Although I had great
doubt upon the subject of the lien of the Searls' judgment
upon the Galen and Ulysses lands at the time of the argu-
ment, subsequent examination and reflection induces me to
think the decision of the vice chancellor was right on this
question as well as upon other parts of the decretal order
appealed from.   The order or decree must therefore be
affirmed, with costs.   And as the respondents G. and T.
Searls have been deprived of the use of their part of the
fund by the appeal, if it has not been invested in the mean-
time so as to produce legal interest, the appellants must pay
them sufficient by way of damages for the delay to make
up to them their legal interest pending the appeal, upon the
amount allowed by the master.