PETER BAJEK, complainant,

*v.*

MICHAEL POLACK, ANNA POLACK, JOHN POLACK and the ASSOCIATION OF THE SONS OF POLAND, defendants.

[Decided April 9th, 1936.]

*Mr. John C. Barbour,* for the complainant.

*Mr. Abraham I. Feltman,* for the defendants Michael Polack, Anna Polack and John Polack.

*Mr. Stanislaw A. Gutowsky,* for the defendant Association of the Sons of Poland.

LEWIS, V. C.

On May 2d, 1932, complainant executed a deed, wherein his wife joined, conveying the property known as 134 Passaic street, Passaic, New Jersey, to defendant Anna Polack, which instrument, as well as the mortgage upon and a deed

for said property which she subsequently made, he now seeks to have set aside and canceled because of its alleged fraudulent procurement.

The jurisdiction of this court to decree the cancellation of a deed or other instrument vitiated by the practice of fraud or misrepresentation in its procurement is of equal antiquity with the jurisdiction of this state itself and is now settled beyond any peradventure. *Crane* v. *Conklin, 1 N. J. Eq. 346; Hutchinson* v. *Tindall, 3 N. J. Eq. 357; O'Connor* v. *Rempl, 29 N. J. Eq. 156; Troxell* v. *Silverthorn, 45 N. J. Eq. 330; LeGendre* v. *Goodridge, 46 N. J. Eq. 419; affirmed, sub nom. LeGendre* v. *Byrnes, 48 N. J. Eq. 308; Eggers* v. *Anderson, 63 N. J. Eq. 264.*

The execution, acknowledgment and delivery of the instrument in question are all admitted. Its invalidity, however, is here asserted, based upon complainant's claim that he, through the fraudulent representations of the defendant Michael Polack, and the latter's representatives, was led and induced to believe that it was a lease and not a deed for the property in question. In determining this issue, a consideration of the facts and circumstances leading up to and culminating in the execution of the here questioned instrument will undoubtedly be most helpful.

Those facts are: defendant Michael Polack was owner of a dry goods business, well versed in business methods and in need of funds to protect his $25,000 investment in the Standard Brick Company of which he was treasurer. Having enjoyed complainant's trust and confidence over their many years of friendship, he requested complainant for a loan of $5,000, which request was complied with in a day or two thereafter when he received complainant's check to his order in that amount, he, in turn, giving complainant, as evidence of said loan, a promissory note of the said Standard Brick Company endorsed by its president and himself.

In December of 1930, upon this defendant's plea for further time, based upon his alleged lack of funds, and his promise to convey the property in question to complainant as security, complainant was induced to forego his then request

for payment of said loan. Thereafter, on January 15th, 1931, defendant conveyed the property in question to complainant as security for said indebtedness, subject, however, to an arrangement under which he was permitted to remain in occupancy of said premises upon his paying all the taxes, insurance, interest and other carrying and maintenance charges thereon.

The evidence further discloses that sometime thereafter said defendant requested complainant to call at the office of his (defendant's) nephew and attorney for the purpose of there executing a two years lease on the property in question which that attorney had prepared at his request; that thereafter on May 2d, 1932, complainant called at said law office and there signed and acknowledged the now challenged instrument before a notary public who was there employed as a stenographer and by whom said instrument was represented to be a two years lease; that it was only after payment of the loan had been defaulted in and as a result of a subsequent examination of the title to said premises, that complainant discovered that the instrument in question was in fact a deed to said defendant's wife, Anna Polack, and not a lease, for the said property; as he had been led and induced to believe.

But defendant, however, claims that he apprised complainant that the instrument in question was a deed and not a lease. Judged in the light of his conduct while upon the stand, as well as all of the surrounding evidence, his assertions towards that end cannot help but arouse and stress the skepticism of the court. For the purpose of giving his said claim the earmarks of plausibility, defendant deliberately testified that the purpose for which he originally transferred the property to complainant was not to collateralize his indebtedness, as was testified to by complainant, but merely to place it beyond the reach of the Passaic National Bank which then held, and was about to bring suit upon, a note bearing his endorsement. If that were so, then it is strange, indeed, that he (a) failed to choose as his grantee some relative or other person closer to him than complainant, (b) failed to require or procure from complainant an immediate

reconveyance of said property either to himself or his nominee, as is customarily and usually done in such cases—the deed of reconveyance being withheld from record, or not, as might in each particular instance best serve the purpose desired; and (c) failed to obtain a single piece of writing to insure the return of the property to him or to guard against its being encumbered, voluntarily or otherwise, while title remained in complainant's name for more than a year. All of these facts, entirely unexplained and unaccounted for by defendant, are manifestly out of harmony and irreconcilable with his here asserted claim.

Nor can the fact be overlooked that defendant, by claiming that such was the purpose of his conveyance to complainant, has thereby necessarily acknowledged and branded himself as the perpetrator of a fraud upon his pursuing creditor, the Passaic National Bank. Thus he himself has furnished potent reasons for disbelieving his entire testimony and incidentally has supplied corroboration and great force to complainant's claim that he was led and induced to execute the challenged instrument by the fraudulent representations of defendant, and the notary public in the employ of his nephew-lawyer, that it was a two years' lease. Excepting in a few instances, manifestly due to either his confusion or inability to understand the question, complainant's testimony clearly, unequivocally and irresistably constrains me to the inescapable conclusion that the here questioned deed was procured through the aforesaid fraudulent representations, and hence should be set aside and annulled.

Passing now to a consideration of the deed to defendant John Polack, which was drawn by his lawyer-son, was dated July 22d, 1932, was executed and delivered by his brother and sister-in-law, the defendants Michael and Anna Polack, respectively, and was recorded on August 20th, 1932.

It is here insisted on his behalf that the conveyance to him is entirely immune from and superior to any of the claims or equities here asserted by complainant in and to the property in question. The soundness of this contention would be incontrovertible if his were the status of a *bona fide* purchaser,

without notice and for a valuable consideration; for, upon the doctrine enunciated in *Mingus* v. *Condit, 23 N. J. Eq. 313; Woodruff* v. *Depue, 14 N. J. Eq. 168; Shannon* v. *Marselis, 1 N. J. Eq. 413; Cornish* v. *Bryan, 10 N. J. Eq. 146; Wilson* v. *Hill, 13 N. J. Eq. 143,* it must be conceded, as an undoubted principle of equity jurisprudence, that such a purchaser acquires a title free from all latent equities existing in favor of third persons.

The evidence, however, discloses that this defendant received the deed to secure payment of the grantor's pre-existing indebtedness to him. In view of this, he cannot be regarded in equity as occupying the status of an innocent purchaser for a valuable consideration nor can he be accorded the rights of such a purchaser as against the superior equities of complainant. *Mingus* v. *Condit, supra; Root* v. *French, 13 Wend. 570; Nurse* v. *Godfrey, 3 Story 364; Dickerson* v. *Tilinghast, 4 Paige 215; Padgett* v. *Lawrence, 10 Paige 170; Jessup* v. *Hulse, 29 Barb. 539; Manhattan Co.* v. *Evertson, 6 Paige 457.* The rule is now well settled that the subsequent legal title to land, in order to prevail over a prior equitable title, must not only have been acquired in good faith and without notice of the prior equity, but must also be founded upon an original or presently moving consideration of value. *DeWitt* v. *Van Sickle, 29 N. J. Eq. 209; Wheeler* v. *Kirtland, 24 N. J. Eq. 552; Pancoast* v. *Duval, 26 N. J. Eq. 445; Sipley* v. *Wass, 49 N. J. Eq. 463; Milton* v. *Boyd, Idem. 142; Martin* v. *Bowen, 51 N. J. Eq. 452; Protection Building and Loan Association* v. *Knowles, 54 N. J. Eq. 519; Ingersoll* v. *Somers Land Co., 82 N. J. Eq. 476; Rutherford National Bank* v. *H. R. Bogle & Co., 114 N. J. Eq. 571; George F. Perry & Sons, Inc.,* v. *Mand, 110 N. J. Eq. 111; Board of Education of Elizabeth* v. *Zinc, 101 N. J. Eq. 78.*

It is also urged on behalf of said defendant that he, at the time of said conveyance, made an additional loan to his brother, for which it was intended to act as security. As to the amount and extent of money so loaned, if any, he unquestionably, upon the authority of *Wheeler* v. *Kirtland,*

*supra; Lawshe* v. *Trenton Banking Co., 87 N. J. Eq. 56,* and cases to like effect, occupies the position of a *bona fide* purchaser, for a valuable consideration and without notice, no evidence having here been adduced from which notice may be reasonably inferred, and hence is entitled to the rights and protection afforded to such persons.

Finally, as respects the mortgage held by defendant Association of the Sons of Poland. From the testimony adduced on behalf of this defendant, it clearly appears that defendant Anna Polack, in the usual and customary manner, made formal application to it for a $9,000 mortgage loan upon the property, the deed for which she then held. The loan was granted, a search of the title to the property was made and title was found to be in her name; only after which this defendant actually paid out the sum of $9,000; more than $5,000 having been used for the purpose of paying and obtaining cancellations of the two mortgages then encumbering said property, and the balance, after paying the taxes due to the city of Passaic and the search fees, &c., having been paid over to the mortgagor.

Notwithstanding the foregoing, it is insisted on behalf of complainant that the legal rights of this mortgagee be subordinated to the equities here asserted by him. Fraud, particularly where title to real estate is involved, is not to be presumed, but should be strictly proven by evidence that is clear, concise and unequivocal. *Fortunel* v. *Martin, 114 N. J. Eq. 235.*

Having obtained its mortgage in good faith and for a then passing valuable consideration, defendant's rights thereunder can neither be defeated by nor subjected to such equities as may exist in favor of complainant by reason of the fraud perpetrated upon him in the absence of proof that it had notice, actual or constructive, thereof. *Hedden* v. *Cowell, 37 N. J. Eq. 89; Lawson* v. *Acton, 57 N. J. Eq. 107; Geyer* v. *Geyer, 75 N. J. Eq. 124; Cook* v. *Jack, 78 N. J. Eq. 584;* which proof is here wanting.

There will be a decree in accordance with the conclusions hereinabove expressed.