## WILCOXEN v. MORGAN.

| | |
|---|---|
| 2 | 473 |
| 4 | 595 |
| 4 | 596 |
| 2 | 473 |
| 1a | 37 |
| 2 | 473 |
| 19 | 303 |
| 5 | 473 |
| 23 | 541 |
| 2 | 473 |
| 19a | 527 |

EVIDENCE — *of admissions by grantor in a deed.* Declarations of a grantor at the time of executing a deed for land may be received in evidence for the purpose of showing whether the conveyance was made with intent to defraud creditors.

*Of intention to defraud creditors.* These circumstances show that a deed was made with intent to defraud creditors.

1. That the grantor declared his purpose to put his property out of the reach of his creditors at the time of executing the deed.

2. That the grantor took from the grantee a power of attorney, authorizing him to lease, sell and dispose of the property in his discretion, and thereafter remained in the possession and enjoyment of the property in the same manner as before the conveyance.

3. That the deed was made to a brother of the grantor in the absence of the latter, and without his knowledge, and was not delivered otherwise than by putting it on record.

4. That the deed was without consideration.

DEED — *voluntary, whether the grantee must have entertained a fraudulent intent.* One who has paid nothing for land cannot defend his title upon

the ground that he did not participate in the fraudulent intent of his grantor.

DEED — *voluntary and fraudulent, void as to subsequent creditors.* A voluntary conveyance of land made with intent to defraud existing creditors of the grantors is void as to subsequent creditors also.

*Purchaser with notice not protected.* Where a voluntary conveyance of land is made with intent to defraud creditors of the grantor, one who purchases from the grantee with notice of such intent takes the title subject to all the infirmities with which it was affected in the hands of his grantor.

EVIDENCE — *of notice to purchaser of fraud in prior conveyance.* J. R. G., with intent to defraud his creditors, conveyed to D. G., his brother, certain lands. A purchaser from D. G. shall be charged with notice of such fraudulent intent upon the following circumstances :

1. That J. R. G. remained in possession of the land after the alleged sale to D. G., dealing with it as his own.

2. That after the alleged sale, M., the purchaser, occupied the premises with J. R. G., as his copartner, and paid no rent therefor, upon the ground that his services were of greater value than his copartner's in the common business.

3. J. R. G. assisted in negotiating the sale to M.

4. It was agreed that M. should apply a portion of the purchase-money to the payment of J. R. G.'s debts.

5. At the time of the purchase by M. he was informed that D. G. was acting for another and not for himself.

LISS *v.* WILCOXEN, *ante,* 85, decides that unlawful detainer lies at the suit of a purchaser at sheriff's sale against the judgment debtor and others holding in the same right to recover the possession of realty.

## *Error to District Court, Gilpin County.*

THIS was an action of unlawful detainer in the district court of Gilpin county. The plaintiff alleged that Belle Cable, on the 18th of October, 1870, recovered in a justice's court a judgment against James R. Grant for the sum of $170 and costs. That execution was issued and returned, no property found. That transcript of the judgment was filed in the clerk's office of the district court December 9, 1870, and that execution was issued out of the district court thereon, December 14, 1870. That the execution was levied on the property described, on the 19th of January, 1871, and that the same was sold to the plaintiff under said execution, February 11, 1871 ; that plaintiff obtained a sheriff's deed for the property, November 22, 1871. That plain-

tiff demanded the possession of the property on the 19th of March, 1872, and that since the execution of the sheriff's deed, and the service of notice, he, the plaintiff, had been entitled to the possession of the premises. The defendant answered and the cause was brought to trial before the court without a jury. .

At the trial, the plaintiff gave evidence of the judgment, the execution and the sale of the property and the conveyance by sheriff's deed to him as mentioned in the complaint. He also proved the demand for possession, and the occupancy by defendant of the premises. The defendant put in evidence a warranty deed for the property in dispute, from James R. Grant to Daniel Grant, dated November 6, 1869, which, it will be observed, was nearly a year prior to the recovery of the Cable judgment. The defendant also produced a deed from Daniel Grant to himself, dated February 7, 1871, for the same property. The defendant testified in his own behalf that he obtained possession of the premises at the date of the purchase from Daniel Grant, and that he knew nothing of the deed from James to Daniel Grant being fraudulent. That he agreed to pay $500 for the property, of which $250 was to be applied in satisfaction of James Grant's debts to third parties. In rebuttal, the plaintiff called a witness, who stated that he drew the deed from James R. to Daniel Grant, at the request of James. Plaintiff's counsel then asked, " what was said at the time," and defendant objected to the question. The objection was overruled, and the witness answered:

" The deed was made in the evening ; during the day James Grant asked me to make out a warranty deed for him ; I asked him if he had been making a sale ; he said no ; said he had got in debt and was afraid they would take his property ; he said he wanted to put his property in his brother's name ; he wanted all his property embraced in the deed, including the blacksmith tools ; all was put in ; I drew up the deed and took the acknowledgment ; he also wanted a power of attorney from his brother to him, so he could use and dispose of the property as if no conveyance had been

made; he did not want anybody to know of the sale unless they went to the record; I drew up the power of attorney, and gave directions about the acknowledgment of it; it was a general power, giving James right to lease or sell or do what he pleased with it; I gave the deed and power of attorney to James Grant, and he got the deed recorded; James said he made the deed for the purpose of putting his property out of the reach of his creditors; he mentioned Sarah J. Malloy as one; she had commenced suit when the deed was made; I know Robert Wilson had his note for about $400; it was due; think he mentioned other creditors; don't remember their names; Dan. Grant was not present when the deed from James was made; he had never been in the Territory; he lived at Providence, R. I.;. no one was present to represent Daniel Grant; no money was paid."

Plaintiff also called another witness, who testified that he had a conversation with the defendant about the Cable judgment the day before the defendant purchased of Daniel Grant; that in the conversation the defendant stated that he did not fear that judgment, for they could not sell the property under that. This witness also stated, that James R. Grant was in possession of the property from the fall of 1866, until, and at the time of the sale by Daniel to defendant; that the defendant occupied the property, with one Gilbert, and paid the rent therefor to James Grant; that James always claimed to own the property, until the sale to defendant. Plaintiff called another witness, who testified as follows: "That he was present at the sale, from Daniel Grant to defendant, and that he drew the papers to effect the transfer; mortgage given for part of the purchase-money; made the papers and did the business; I heard a conversation between defendant and Dan. Grant about the time to be given for paying the mortgage; it occurred when the note was being drawn; Morgan asked of Dan. more time for payment; Dan. objected to this, saying, if the business was for himself he would give more time, but it was for another person, and therefore he could not do so;

this is as near the language as I now remember ; in addition to the declaration of Dan. that he was selling the property for another person, I had  reasons for believing he was acting for James R. Grant, who had owned the property ; James had left Colorado at the time of the sale; I believed, from circumstances with which I was then familiar, that a conveyance had been made by James to Dan. Grant for the purpose of avoiding payment of debts."

The plaintiff, himself, testified in rebuttal :

"About February 1st, 1871, John Liss and Dan. Grant came to my office ; Dan was trying to sell the property described in the deed to him ; he was finding fault because I had said he had no title ; I said to him : ' James Grant conveyed that property to you to defraud his creditors ;' Dan. said : ' Can you prove that ?' I answered : ' I think I can ;' he made no reply, and went out."

The defendant being recalled, testified that he occupied the premises with James Grant, and paid no  rent therefor ; that James said that defendant was a better workman than he, and that he need not pay rent to him (James).

The defendant had judgment, and the plaintiff sued out this writ of error.

Mr. J. N. WILCOXEN, plaintiff in error, in person.

Mr. WILLARD TELLER and Mr. L. C. ROCKWELL, for defendant.

WELLS, J.   1st. The declarations of James R. Grant, made at the time of the preparation of the conveyance to Daniel Grant, were properly received upon the  question, whether the conveyance was or was not with intent to defraud creditors. *Phillips* v. *Eames*, 1 Esp. 357 ; *Cook* v. *Swann*, 5 Conn. 141 ; *Wyckoff* v. *Carr*, 8 Mich. 44.

2d. These declarations and the attendant circumstances ; the relationship of the parties ; the fact that the conveyance was made without the knowledge of the grantee ; the absence of consideration, and the subsequent long-continued

possession and dominion of the premises by the grantor, sufficiently manifest that the purpose of James R. Grant, in this conveyance, was to put the estate beyond the reach of his creditors.

3d. It is to no purpose to say that Daniel Grant was ignorant of the fraudulent intent of his brother in this conveyance, for the evidence shows that he paid nothing. One who purchases in good faith, for a valuable consideration paid, is not, it is true, affected by a secret fraudulent intent on the part of the grantor. It is otherwise, however, as to a mere volunteer, or where the consideration is love and affection only.

4th. Conveyances, voluntary merely, are maintained as against subsequent creditors. A conveyance which is not only voluntary, but animated by a positive and active intent to defraud existing creditors, is void, not only as to these, but as to subsequent creditors as well. *Parkman* v. *Welch*, 19 Pick. 237; *Brown* v. *Niles*, 16 Ill. 386; *Winchester* v. *Charter*, 12 Allen, 610; *King* v. *Wilcox*, 11 Paige, 593; *Henry* v. *Fullerton*, 13 Sm. & M. 634; *Hutchinson* v. *Kelly*, 1 Rob. 128; *Parrish* v. *Murphy*, 13 How. 92; *Pennington* v. *Clifton*, 11 Ind. 165; *Marston* v. *Marston*, 54 Mℰ 476; *Smith* v. *Carlisle*, 17 N. H. 417. The terms of our statute are quite as broad as those of 13 Elizabeth, c. 5, and this effect has almost everywhere been accorded to it. The authorities cited to the contrary doctrine seem to be opposed to the settled course.

5th. It must be conceded that one who, with notice of the prior fraud, purchases of the grantee in a conveyance fraudulent as to creditors, takes the title subject to all the infirmities with which it was affected in the hands of his grantor. To hold otherwise, is to say that *three* conspiring together may accomplish a fraud which is impossible to *two*. *Manhattan Co.* v. *Evartson*, 6 Paige, 457.

6th. The evidence sufficiently manifests that the appellee, at the time of his purchase, had notice of the fraudulent character of the conveyance of James R. Grant to Daniel Grant. Long subsequent to this conveyance James R.

Grant was in possession of the property, dealing therewith as his own — the appellee was for a time his co-tenant and partner — free of rent ; this immunity being expressly upon the ground that the labor and services of the appellee about the common business were of greater value than those of his copartner. Both James R. Grant and Daniel Grant participated in the negotiation which was consummated in the conveyance to appellee. Daniel Grant agreed that a part of the purchase-money to be paid by appellee should be discharged by a payment of James R. Grant's debts, and distinctly informed appellee that in this sale and convey-ance he was acting for another, and not for himself.

These circumstances seem to us sufficient beyond doubt to advise the defendant that Daniel Grant held the estate in some way for the benefit of his brother, to put him upon inquiry as to the nature of this relation, and to charge him with knowledge of every circumstance which such inquiry, pursued with reasonable patience and diligence, would have developed. No man, having knowledge of such circum-stances of suspicion as these, is at liberty to close his eyes and, by his negligence, make himself the instrument of con-summating a fraud against which the injured party might otherwise have relief.

The finding of the court below seems to us, therefore, unsustained by the evidence, and the foregoing resolutions bring the case within the principle of the determination in *Liss* v. *Wilcoxen*, decided at the term of 1873, *ante*, 85.

Upon the other questions presented in argument, no opinion is expressed.

The judgment is reversed and the cause will be remanded for further proceedings according to law.

*Reversed.*