## DE MARES v. GILPIN ET AL.

1. LIMITATIONS TO LAND CLAIMS IN EQUITY, AND THE OBLIGATIONS OF CLAIMANTS TO TAKE NOTICE OF PUBLIC LAWS, RECORDS AND ACTS HOSTILE TO THEIR RIGHTS.— In 1843 or 1844 the Mexican government granted to the father of the plaintiff and the father of one B., jointly, a tract of land now situate within the county of Costilla, this state. Under the act of congress of July 22, 1854, providing for

the appointment of a surveyor-general to investigate claims to lands arising under the Mexican laws, B., as sole owner of the whole tract, applied for and obtained for himself an approval of the grant. Subsequently, as sole owner, he applied to and obtained from congress a confirmation of the grant, and in other ways openly asserted exclusive ownership in himself. The acts of approval and confirmation were of record. In the absence of any contract on the part of B. to convey to the plaintiff, or any disability on her part to sue for her interest, her failure so to do for many years after the public acts and records showing the assertion and confirmation of the entire title in B., on the theory that he was chargeable with a resulting trust in the plaintiff's favor, was properly imputable to her as laches, as against the claims of subsequent *bona fide* purchasers.

2. NOTICE NECESSARY TO PRESERVE RESULTING TRUSTS.— In a resulting trust not evidenced by anything of record, an innocent *bona fide* purchaser without notice will take the estate divested of the trust.

3. REQUISITES OF A BILL TO IMPEACH A CONVEYANCE BY A TRUSTEE.— Where property has been conveyed by an alleged trustee, a bill in equity is demurrable that does not state that the purchaser had notice of the claims and equities of the plaintiff.

4. ALLEGED DISABILITIES TO BRINGING SUIT MUST PERTAIN TO THE JURISDICTION OF THE LOCUS IN QUO.— The coverture and disability of the wife to sue by reason of the law of the country of her residence cannot prevail to excuse neglect in bringing a suit in another jurisdiction where there is no such disability.

*Appeal from District Court of Arapahoe County.*

Messrs. J. C. STALLCUP and WELLS, McNEAL & TAYLOR, for appellant.

Messrs. MARKHAM & DILLON and BELA M. HUGHES, for appellees.

REED, C. This was a proceeding in equity brought by Benigna Lee De Mares against William Gilpin, William J. Palmer and several others, to recover an undivided half interest in a large body of land, alleged to be some two hundred thousand acres, in the county of Costilla. The amended complaint was filed September 2, 1882. After the institution of the suit the plaintiff died; and her surviving husband, Vicente De Mares, was substituted in her stead. It is stated in the complaint that plaintiff was the sole heir

of Stephen Louis Lee, born in Taos, N. M., in April, 1830, married to Joseph Pley in 1841, and after his death married, in 1877, to the present plaintiff, Vicente De Mares; that in the years 1843 and 1844, her father, Stephen Louis Lee, and Narciso Beaubien, obtained from the Mexican government a grant of land, including the land in controversy; that her father and Beaubien both died on the same day,— January 19, 1847,— each seized of one-half of the land; that she, as sole heir, entered into and held possession of one-half the grant, and was in possession at the time of the execution of the treaty of Guadalupe Hidalgo, February 22, 1848. From all that appears, this condition of affairs continued until after the passage by congress of the act approved July 22, 1854, entitled "An act to establish the offices of surveyor-general of New Mexico, etc., and for other purposes," when Charles Beaubien, son of original grantee, Narciso Beaubien, as sole claimant, applied to William Pelham, surveyor-general of New Mexico, to have the grant surveyed and approved, which was done in the year 1856; that subsequently Charles Beaubien, as sole owner, applied to congress to have the grant confirmed to him, which was done by an act approved June 21, 1860. Plaintiff then states, on information and belief, that on or about the 4th day of May, 1848, her husband Joseph Pley, claiming to be the administrator of the estate of her father by an appointment from the prefect court of the county of Taos, N. M., at the instance and at the solicitation of Charles Beaubien, in consideration of the release of a large indebtedness owing from Pley to him and for goods, chattels and lands conveyed to Pley, made, executed and delivered to Beaubien a deed of the undivided one-half of the entire grant; that such deed was fraudulent and void; that no order or decree of the prefect court, or any other court, was made, authorizing or empowering him to make a sale and conveyance; and that the prefect court had no authority to make such a decree. Also, that it is pretended and claimed that on January 27, 1858, plaintiff, her husband

Joseph Pley, and her mother, Maria de la Luz Tafoya, made and executed a deed to one Ceran St. Vrain of their undivided one-half of the granted land; that such deed, if any, was a forgery, and was never executed or acknowledged by her mother or herself; that neither the deed pretended to have been made by Pley as administrator to Charles Beaubien, nor the pretended deed of plaintiff, her mother and Pley, to St. Vrain, were recorded in the county of Taos, N. M., nor in the county of Costilla, in this state, until one year before the institution of this suit; that plaintiff, until one year before bringing suit, was not informed in regard to the pretended execution of the deeds, or of either of them, or of the fact that Beaubien, St. Vrain or defendants denied her title, or claimed the right to exclusive possession of the land; and that Beaubien, St. Vrain and defendants, and each of them, until one year before bringing suit, fraudulently concealed from the plaintiff knowledge of the pretended execution and existence of the two deeds, and avers that if Beaubien, St. Vrain, defendants, or any of them, have at any time taken exclusive possession of the grant, or any part of it, it was at such remote distance from her residence that the fact was concealed from her. It is stated that, at about the time the land was granted, her father and Narciso Beaubien entered into possession of the granted lands, "and erected thereon divers dwellings, stables, store-houses and other buildings, and inclosed divers large tracts of the said land, and from thence until the decease of the said Stephen Louis Lee and Narciso Beaubien * * * they, in person, and by their tenants and servants, cultivated divers large tracts of said grant, and were in the actual occupation of the whole thereof," and that, after the death of her father, she entered into the possession of the undivided one-half of such grant, as a tenant in common with the heirs of Narciso Beaubien, and remained in the possession until the treaty of Guadalupe Hidalgo, and that, at all times from and after the death of her father

until the time of the approval by the surveyor-general, she was in the actual occupancy and possession of the land jointly with heirs of Beaubien. Further avers that she was a Mexican, unacquainted with the English language, unable to read or write, and unfamiliar with business; that, at the time of the pretended conveyance by Pley, she was a married woman and a minor, "and ever since, except for a short period, hath been and still is a married woman, and, by the laws, usages and customs of New Mexico, * * * under the control, power and authority of her husband;" and that, by reason of the premises, Beaubien, St. Vrain and defendants have been able to conceal from her their pretended claims to the property.

A demurrer containing twenty-four special supposed grounds was filed. The grounds of demurrer, for the purpose of this discussion, may be grouped as follows: (1) A general want of equity, which may be considered as embracing all the causes or grounds; (2) laches or neglect on the part of the plaintiff; (3) a failure to connect defendants in any way with the alleged frauds by which Beaubien and St. Vrain attempted to divest her of title; (4) a failure to charge defendants, or any of them, with knowledge of the frauds by which it is claimed Beaubien and St. Vrain obtained the ostensible title.

The demurrer was sustained, and a decree entered dismissing the bill, from which an appeal was taken.

It is contended that Charles Beaubien became the trustee of plaintiff. It is said in the complaint that, although the approval and confirmation were to him, and in his own name and behalf, "the confirmation inured to the benefit of the plaintiff to the extent of one undivided half part of the said donation or grant of lands." It is not claimed that the trust was created by any direct conveyance or act of the plaintiff or an ancestor. It is not claimed that there was an express trust. The trust, if any, was an implied or resulting trust by operation of law, growing out of the al-

leged relation of the parties to the subject-matter of the controversy.  1 Greenl. Cruise, 391, *p.;  *Dyer v. Dyer*, 2 Cox, 92;  *Wallace v. Duffield*, 2 Serg. & R. 521.

The distinction between express and resulting trusts is important, and the rule of law in regard to notice differs materially in the two.

1. In regard to the supposed laches and negligence of plaintiff in asserting her alleged rights, and, for the present, leaving entirely out of the discussion the two alleged fraudulent deeds,— the one from Pley to Beaubien, and that of plaintiff, her mother and husband, to St. Vrain,— we find that Charles Beaubien some time prior to December 30, 1856, applied to the surveyor-general to have the grant surveyed and approved under the act of congress of July 22, 1854, and on that date, December 30, 1856, the grant was approved; that subsequently he applied to congress to have the title to the grant confirmed, which was done under the act of congress approved June 21, 1860.  The applications for approval and confirmation were both made by Beaubien as sole owner.  There is no allegation of any contract or agreement whereby any supposed rights of plaintiff were to be recognized and protected, and that Beaubien should take the entire title, one-half in trust for her, and afterwards convey.  The acts of approval and confirmation were both open, public and notorious acts, of which she was bound to take notice, and, in the absence of contract, an assertion of the entire title in himself, to her exclusion, and a denial of any title in her, or of any trust in himself.

"A legislative confirmation of a claim to land is a recognition of the validity of such claim, and operates as effectually as a grant or quitclaim deed from the government." *Langdeau v. Hanes*, 21 Wall. 530.

"A confirmation is the conveyance of an estate or right that one hath in or unto lands or tenements to another, that hath the possession thereof, or some estate therein, whereby a voidable estate is made sure and unavoidable, or

whereby a particular estate is increased and enlarged."
Shep. Touch. 311.

By section 8 of the act of congress for the appointment of
the surveyor-general for the territory of New Mexico, it is
enacted " that it shall be the duty of the surveyor-general,
under such instructions as may be given by the secretary of
the interior, to ascertain the origin, nature, character and
extent of all claims to lands under the laws, usages and
customs of Spain and Mexico, and for this purpose may
issue notices, summon witnesses, administer oaths, and do
and perform all other necessary acts in the premises.   He
shall make a full report on all such claims as originated
before the cession of the territory to the United States by
the treaty of Guadalupe Hidalgo of 1848, denoting the va-
rious grades of title, with his decision as to the validity or
invalidity of each of the same under the laws, usages and
customs of the country before its cession to the United
States,   *   *   *   which report shall be laid before con-
gress for such action thereon as may be deemed just and
proper, with a view to confirm *bona fide* grants," etc.   10
St. at Large, 309.

It will be observed that under the statute such proceed-
ings must be open, notorious and of record in the office of
the surveyor-general.  After report the finding to be in the
office of the secretary of the interior until action taken by
congress ; then embodied in the public statutes.  These pub-
lic acts and records, and the assertion of entire title by
Beaubien to her exclusion, were those of which she was
bound to take notice.  Ignorance of them is not alleged,
nor is any excuse given for her neglect to intervene and as-
sert her rights.  In equity, where it is alleged there was
fraudulent concealment of important facts affecting the
rights of a party, laches or neglect can only be imputed
from the time of the discovery of the fraud.  In Story, Eq.
Jur. § 1521a, it is said: "In general, it may be said that the
rule of courts of equity is that the cause of action or suit

arises when, and as soon as, the party has a right to apply to a court of equity for relief. In cases of fraud or mistake it will begin to run from the time of the discovery of such fraud or mistake, and not before." See, also, *Imperial Gas-Light & Coke Co. v. London Gas-Light Co.* 10 Exch. 39; *Miller v. Miller*, L. R. 8 Eq. 499; *Brooksbank v. Smith*, 2 Younge & C. 58; *Ferris v. Henderson*, 12 Pa. St. 49. In *Philippi v. Philippe*, 115 U. S. 156, after stating the rule as above, it is said: "It must be borne in mind that this rule is subject to the qualification that when the trust is repudiated by clear and unequivocal words and acts of the trustee, who claims to hold the trust property as his own, and such repudiation and claim are brought to the notice of the beneficiary in such manner that he is called upon to assert his equitable rights, the statute of limitations will begin to run from the time such repudiation and claim came to the knowledge of the beneficiary." See to same point, *Gratz v. Prevost*, 6 Wheat. 481; *Oliver v. Piatt*, 3 How. 333; *Badger v. Badger*, 2 Wall. 87; *Bright v. Legerton*, 2 De Gex, F. & J. 606; *Wedderburn v. Wedderburn*, 4 Mylne & C. 41. In *Nettles v. Nettles*, 67 Ala. 599, cited with approval in 115 U. S. 157, it is said: "It is true, as a general rule, that when the relation of trustee and *cestui que trust* is uniformly admitted to exist, and there is no assertion of adverse claim or ownership by the trustee, lapse of time can constitute no bar to relief; but where the trust relation is repudiated, * * * or the acts of the parties, or other circumstances, give rise to presumptions unfavorable to its continuance, in all such cases a court of equity will refuse relief on the ground of lapse of time."

This being the rule in the case of express trusts created by the parties, and admitted to exist, it must certainly apply with much greater force in a case of resulting trust, resulting from the operation of law, which only becomes fixed by decree of court. In *Martin v. Smith*, 1 Dill. 85, it is said: "The fraud intended by the section which shall arrest the run of the statute must be one that is secret and

concealed, and not one that is patent and known." The law in regard to notice is well defined both in England and the United States. In *Kennedy v. Green,* 3 Mylne & K. 722, it is said: "Whatever is notice enough to excite attention, and put the party on his guard, and call for inquiry, is also notice of everything to which it is afterwards found that such inquiry might have led." When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it. In Angell on Limitations (section 187, and note) it is said: "The presumption is that if a party affected by any fraudulent transaction or management might, with ordinary care and attention, have seasonably detected it, he seasonably had actual knowledge of it." See *Nudd v. Hamblin,* 8 Allen, 130; *Cole v. McGlathry,* 9 Me. 131; *McKown v. Whitmore,* 31 Me. 448.

In *Wood v. Carpenter,* 101 U. S. 143, after a careful survey of the authorities, it is said: "Concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry. There must be reasonable diligence, and the means of knowledge are the same thing in effect as knowledge itself. The circumstances of the discovery must be fully stated and proved, and the delay which has occurred must be shown to be consistent with the requisite diligence."

See, also, on this point, *Case of Broderick's Will,* 21 Wall. 509–520; *Bowman v. Wathen,* 1 How. 194; *Carr v. Hilton,* 1 Curt. C. C. 393; *Manning v. San Jacinto Tin Co.* 7 Sawy. C. C. 430; *Beckford v. Wade,* 17 Ves. Jr. 88; Sugd. Vend. 1052.

Applying these well-established rules of law to the complaint in this case, we must conclude: *First,* that the acts of Charles Beaubien in applying for and securing an approval of the grant in 1856, applying for and obtaining a confirmation of title in 1860, both in his own name as sole owner, to the exclusion of the plaintiff, were public and notorious acts, which, from their nature, could not be concealed if such attempt had been made, of which plaintiff

was bound to take notice; *second,* that, without an agreement to convey, such acts were a public denial and contradiction of the supposed trust and an assertion of the entire title in himself; consequently, that she had full notice of his intention to exclude her and hold adversely. And this conclusion is reached regardless of the fact of her knowledge, or want of knowledge, of the alleged fraudulent deeds. Hence it follows that negligence and laches can be imputed to her from and after the year 1856 — certainly after confirmation in 1860 — unless she was resting under some legal disability (which we shall notice hereafter), and that the statute of limitation commenced to run at least as early as June, 1860, if not nearly three years before that time.

We are also of the opinion that the complaint is defective for want of allegations of acts of ownership, possession, management and control of the property from and after the approval and the confirmation of the grant. The allegations are that up to that time she asserted and exercised her rights as owner; and although there were numerous buildings, improvements and large tracts of cultivated land in the occupation of servants and tenants, from all that appears in the complaint, she apparently withdrew from all management, did not participate in the rents, income or profits or pay taxes. The legal inference from the facts would be, of a full knowledge on her part of the denial of her interest and an acquiescence in the title asserted by Beaubien to her exclusion.

So far as appears from the complaint, from 1856 to the time of bringing suit — a period of over twenty years — plaintiff was evicted and remained out of possession, in no way participated in the management of the property from and after 1856, with record knowledge that Beaubien claimed to be sole owner from and after June, 1860, with actual knowledge given by public statute that the government had confirmed the grant to him as sole and exclusive owner, and, with the strongest motives that could prompt a person to action, remained idle when an effort should have

been made. If frauds existed, proper diligence could not have failed to expose them. The case as made is stale, and a court of equity should not interfere. Our statute is a bar; and, in the absence of a statute of limitations, it has been held in England, in the federal courts, and in many of the states, that after a lapse of twenty years after a suit might have been instituted, without the commencement of proceedings, where there has been no admission or recognition of a trust, a presumption of settlement would arise, operating as a positive bar.

2. Neither Beaubien nor St. Vrain, who were charged in connection with Pley, deceased, as participating in the alleged frauds, are made parties. The defendants, so far as is shown in the complaint, were *bona fide* purchasers without any knowledge whatever of the alleged frauds or the claim of plaintiff now asserted. For this reason, also, the complaint was demurrable. Where, as in this case, there is no express trust created by the parties, and no record where the trust, if any, is a resulting trust by operation of law, where there was no actual adverse and notorious possession nor acts of ownership by the claimant, and the grantor claimed direct from the government, actual notice to grantees of an existing trust must be alleged and proved; otherwise, they would take the property divested of the trust, if one existed. If a trustee be in the actual possession of the estate, and conveys for a valuable consideration to a purchaser who has no notice of the trust, such purchaser will be entitled to hold the estate against the *cestui que trust*, because confidence in the person is still deemed necessary to a trust; and it is a rule in equity that an innocent person shall not, in general, have his title impeached. 1 Perry, Trusts, § 346; 2 Story, Eq. Jur. § 1264; 1 Greenl. Cruise, 449, *p.; *Jones v. Powles*, 3 Mylne & K. 597; 2 Bl. Comm. 337; 3 Mass. Supp. 578; *Bumpus v. Platner*, 1 Johns. Ch. 219; *Jackson v. Henry*, 10 Johns. 185; Wade, Notice, § 61.

3. The pleader in the complaint, to excuse the neglect of plaintiff, alleges that plaintiff is "a Mexican woman, wholly

unacquainted with the English language, unable to read or write, and unfamiliar with business; that, at the time of the pretended execution of the conveyance aforesaid of the said Joseph Pley unto the said Charles Beaubien, plaintiff was an infant, and was then and ever since, except for a short period of time, hath been, and still is, a married woman, and by the laws, usages and customs of New Mexico, wherein plaintiff during all the time aforesaid resided, and still resides, under the control, power and authority of her husband; and by reason of the aforesaid premises, said Beaubien, St. Vrain and the defendants aforenamed have been enabled to have concealed from plaintiff their pretended claims in and to her said interest in the said grant of lands."

The circumstances and conditions stated may have rendered it more easy to perpetrate frauds upon her and conceal them. The laws, customs and usages of New Mexico may be such as to place a wife under the authority and control of a husband, and place her under a legal disability in that territory. The land having been in Colorado since its organization as a territory in 1861, and her rights in regard to the land necessarily determinable under the laws of Colorado, the peculiar laws, usages and customs of New Mexico cannot satisfactorily be alleged as a disability to excuse negligence here, where coverture does not create a disability in the wife.

In the case of *Broderick's Will*, 21 Wall. 503, it was alleged in the complaint that plaintiff had never resided in California or the United States, and never heard, or had an opportunity of hearing, of Broderick's death, or the events connected with the probate of the will, until more than eight years after its being filed for probate; that they were illiterate, and lived in a remote and secluded region in Australia, etc. In the opinion of the court it is said, at page 519: " Their plea is that they lived in a remote and secluded region, far from means of information, and never heard of Broderick's death, or of the sale of his property, or

of any events connected with the settlement of his estate, until many years after these events had transpired. Parties cannot thus, by their seclusion from the means of information, claim exemption from the laws that control human affairs, and set up a right to open up all the transactions of the past. The world must move on; and those who claim an interest in persons or things must be charged with knowledge of their *status* and condition, and of the vicissitudes to which they are subject. This is the foundation of all judicial proceedings *in rem*. The fact that two of the complainants are married women does not take them out of the operation of the statute of limitations of California."

It is evident that plaintiff labored under no legal disability to prevent the enforcement of her rights in Colorado, and the facts stated in the complaint are insufficient to excuse the negligence of the plaintiff in instituting a suit.

The judgment of the district court should be affirmed.

RICHMOND and PATTISON, CC., concur.

PER CURIAM. For the reasons stated in the foregoing opinion the judgment is affirmed.

*Affirmed.*

MR. JUSTICE ELLIOTT, having presided at the trial below, did not participate in this decision.