[No. 5546.]
[No. 3222 C. A.]

Tibbetts v. Terrill et al.

1.  Fraudulent  Conveyances — Husband  and  Wife — Dealings — Burden of Proof.

The utmost fairness is required in dealings between husband and wife, so far as they affect the rights of creditors, and they are ordinarily bound, whenever a transaction between them is impeached or attacked, to show in the fairest and most favorable light an honesty of purpose and an absence of all intent to hinder or defraud those who may be creditors of the husband.—P. 100.

2.  Same—Evidence—Sufficiency.

A husband, being indebted, conveyed his property to another in consideration of a note; and the latter, in consideration of the giving up of the note, deeded the property to the wife, the trans-

action taking place after the bringing of an action by a creditor against the husband, but before judgment; and prior thereto the husband, in the presence of the wife, boasted that he was too "foxy" for his creditor, and intended to convey the property, and later boasted that he had already caused the property to be conveyed to his wife and that the creditor would be unable to satisfy his judgment. Held, that the conveyance was fraudulent as to the creditor of the husband.—P. 101.

3. **Fraudulent Conveyance—Ground of Invalidity—Holding Property for Another.**

Where one purchases property with funds of another, or holds such property for the use of another, it is a fraud upon the creditors of such other party.—P. 101.

4. **Fraudulent Conveyances—Insolvency—Evidence.**

In a suit by a creditor to set aside a conveyance alleged to be in fraud of his rights, the evidence showed that the debtor was in such impoverished circumstances that he borrowed $2 from the creditor to have a piece of steel taken from his eye, and also borrowed money to take a trip in order to prosecute a claim against the government; and that, while he was absent, his wife had to borrow money to live upon, and there was no proof that he had any other property. Held, that the facts are sufficient to show the insolvency of the judgment debtor in an action to set aside the conveyance.—P. 102.

5. **Homestead—Rights of Wife—Property Acquired in Fraud of Husband's Creditors.**

Where a debtor fraudulently conveys property through a third person to his wife, who conveys to a purchaser for a valuable consideration, and the wife, while the property is in her name, causes the property to be entered in the records as her homestead, she is not precluded by reason of the fraudulent transaction from claiming the homestead.—P. 102.

6. **Same—Enforcement Against Excess of Value.**

The fact that the wife has a valid exemption by such entry does not defeat the right of the creditor to subject such property to his claim where the property was worth more than the homestead; since, by the express provisions of the statute, the property may be sold and the excess charged with the creditor's claim.—P. 103.

7. **Fraudulent Conveyances — Purchasers from Grantee — Good Faith—Evidence.**

A wife obtained the title to property of her husband in fraud of his creditors, and deeded the same land to a purchaser for a valuable consideration; the purchaser's attorney had notice of

all the circumstances of the transaction by which the wife obtained the property, and knew of the existence of a judgment against the husband; and by the examination of the abstract of title which showed the filing of a lis pendens and other facts, which, if inquired into, would have given him personal knowledge of the fraudulent character of the transaction, the claims of the creditor were brought home to the purchaser himself; but he took the opinion of his attorney that the creditor's claim was without merit. Held, that the purchaser was not an innocent purchaser for value, against whom the creditor could not set aside the conveyance to satisfy his judgment; and the contention that the lis pendens was not sufficient to give notice to the purchaser, in that the judgment debtor was not a party to the suit in which it was filed, is of no avail, since the other facts sufficiently showed the purchaser's knowledge of the fraud. Pp. 103, 104.

*Appeal from the District Court of Rio Blanco County.*

*Hon. John T. Shumate, Judge.*

Action by Walter E. Tibbetts against Louise C. Terrill, David P. Terrill, J. A. Alley and John Gray, to subject property fraudulently conveyed to a judgment. From a judgment for defendants, plaintiff appeals.        *Reversed and remanded, with instructions.*

Messrs. Rogers, Cuthbert & Ellis, for appellant.

Mr. E. A. Martin, for appellees.

Mr. Justice Bailey delivered the opinion of the court:

In the year 1900 David P. Terrill was indebted to appellant in the sum of $6,378.00 and had no money with which to pay the indebtedness. He had a claim against the United States government, however, and agreed to pay this indebtedness out of the money obtained from the government as soon as he should receive it. He obtained the money from the

government, but, instead of liquidating the indebtedness, he purchased a ranch in Rio Blanco county. Appellant then, upon the 17th of September, 1900, brought suit against him and recovered a judgment in the sum of $6,378.00.

After this action was brought and before judgment was rendered, the defendant David P. Terrill had a conversation with an attorney named John L. Gray, in which defendant stated to Gray that he was not going to defend the action. Gray advised him to defend it, as otherwise judgment would be taken against him.

About the time the action was commenced David P. Terrill had a conversation with W. L. Smith at the Terrill ranch in the presence of Louise C. Terrill, David P. Terrill's wife, in which the matter of his indebtedness to appellant was spoken of, and in this conversation defendant David P. Terrill stated that he was too "foxy" for Tibbetts, and that he would deed his property to Gray; that he would do this to protect himself. In a later conversation he stated to Smith that he had sold the ranch, and reiterated his previous statement, namely, that he was going to be too "foxy" for Tibbetts; that he had deeded the ranch to Gray, that Gray had deeded it to Mrs. Terrill, and she had deeded it to defendant Alley. The first of these conversations with Smith took place in November, 1900. On the 5th of January, 1901, the judgment was rendered. Upon the 22d of November, 1900, the defendant David P. Terrill conveyed the property to Gray, together with the household furniture and certain other personal property. There was no money consideration paid for this transfer by the grantee Gray, but he gave his note to Terrill, and upon the 31st day of December, 1900, conveyed the property to defendant Louise C. Terrill upon the request of David P. Terrill, receiving as

the sole consideration therefor the promissory note which he had theretofore executed to defendant David P. Terrill, this promissory note being returned to Gray on receipt of the deed by David P. Terrill. At no time did defendant Gray take possession of the ranch, of the household furniture or of any of the property conveyed to him by David P. Terrill.

On the 18th of January, 1901, a transcript of the judgment obtained by appellant against David P. Terrill was filed and recorded in the office of the county clerk of Rio Blanco county. Upon the 30th of April, 1901, an execution which had theretofore been issued upon the judgment was levied upon the ranch property, and thereafter defendant Louise C. Terrill brought an action in the district court of Arapahoe county, alleging that she was the owner of the property and asking that the sheriff be enjoined from selling it under the execution. An interlocutory order was made in that action, recalling the execution and vacating the levy. This action does not appear to have been prosecuted to final judgment, and no finding was made therein as to who was the real owner of the property.

Upon the 5th of September, 1901, Louise C. Terrill caused the word "homestead" to be entered upon the margin of the record of the deed wherein Gray attempted to convey the property to her. In the action brought by Mrs. Terrill to set aside the levy, the appellant filed a cross-complaint wherein he alleged the manner in which Mrs. Terrill obtained the deed to the property, and averred that the whole transaction wherein Terrill conveyed the property to Gray and Gray to Mrs. Terrill was fraudulent and void, was without consideration, and was done for the purpose of defrauding the appellant and hindering and delaying him in the collection of his judgment.

Upon the 9th of September a notice of *lis pendens* was filed with the clerk and recorder of Rio Blanco county by appellant, in which he called attention to the litigation commenced by Mrs. Terrill and his cross-complaint making the averments above set forth.

Upon the 3rd of October, 1901, Mrs. Terrill sold this property, including the ranch, household furniture and the hay and other personal property located upon the ranch, to defendant Alley. A contract of sale was prepared by E. A. Martin, an attorney-at-law, who was Mrs. Terrill's attorney in the action hereinbefore mentioned as having been brought by her. According to the terms of this contract, the defendant Alley had deposited in the bank one thousand dollars and Mrs. Terrill had deposited the deed from herself to Alley, which were to remain in the bank until the abstract of title could be prepared and examined, and Mrs. Terrill could give good title to the property. The abstract having been prepared, was examined by Alley and by Martin on his behalf. This abstract contained, among other things, a memorandum of the deeds from Terrill to Gray and from Gray to Mrs. Terrill, the levy of the execution, the vacation of the levy and the notice of *lis pendens.* These matters were spoken of between defendant Alley and Martin, the attorney for Mrs. Terrill and for Alley, and defendant was assured by Martin that the title was good and that there was no merit in the contention of appellant. Alley then purchased the property, paying six thousand dollars therefor.

This action was then instituted, in which it is contended that the conveyances by which Mrs. Terrill obtained the property were fraudulent and void, because they were made for the purpose of defrauding appellant, and hindering and delaying him in the

collection of his judgment, and that defendant Alley had notice of the defects in the title. It was asked that the conveyance from Mrs. Terrill to Alley be set aside and held for naught, and that the appellant might again levy his execution upon the property and sell it in satisfaction of his judgment.

The Terrills did not answer. Defendant Gray answered, denying the fraud. Defendant Alley answered, denying the fraud and denying any knowledge upon his part of the fraudulent character of the previous transfers, if they were fraudulent. Judgment was rendered for the defendants, and plaintiff appeals.

There is no conflict in the testimony, and the sole question presented to us is as to whether or not the transfer to Mrs. Terrill was fraudulent, and, if so, whether or not the defendant Alley had such notice of its fraudulent character as would prevent him from obtaining good title as against the judgment creditor. It must also be determined as to what effect the entry of the "homestead" by Mrs. Terrill had upon the situation.

In any view that we take of the matter, the conveyance to Mrs. Terrill was void as against the creditors of Terrill. The utmost fairness is required in dealings between husband and wife so far as they affect the rights of creditors.

In the case of dealings between husband and wife "whose relations are most intimate and confidential, they are ordinarily bound, whenever a transaction between them is impeached or attacked, to show in the clearest and most favorable light an honesty of purpose and an absence of all intent to hinder or defraud those who may be the creditors of the husband."—*First Nat'l Bank v. Kavanagh*, 7 Col. App. 160.

We find in this case that the husband, in the presence of his wife, boasted that he was too "foxy" for his creditor, that he intended to convey the property to Gray so that his creditor could never get it, and again boasted that he had already caused the property to be conveyed to Mrs. Terrill and that the plaintiff would be unable to satisfy his judgment.

According to the testimony, the only consideration which Gray received for his conveyance to Mrs. Terrill was the promissory note which he had theretofore given to Terrill for the conveyance to him. This note being made to Terrill in consideration of the conveyance from Terrill, was Terrill's property, in which his wife had no interest, and when he delivered the note to Gray in consideration of the conveyance of the property to Mrs. Terrill, then Mrs. Terrill held the property in trust for the creditors of her husband.

When one purchases property with the funds of another, or holds such property for the use of another, it is a fraud upon the creditors of such other party.—*Doane v. Glenn,* 1 Colo. 495.

But, the defendant Alley says, that the plaintiff ought not to maintain this action because there is no proof of the insolvency of the judgment debtor. There is ample proof of his insolvency. Just previous to the purchase of this ranch, and while Terrill was endeavoring to get his money from the government, he was in impoverished circumstances, he was so destitute that it was necessary for him to borrow two dollars from appellant with which to have a piece of steel removed from his eye. He had to borrow money from appellant to make a trip to Texas, where it was necessary for him to go in the prosecution of his claim against the government. While he was absent Mrs. Terrill was without the means of subsistence and was compelled to borrow money from appellant

to supply herself with food. Terrill then obtained the money from the government and invested it in this ranch. There is no proof that he had any other property. He asserted that when he had this ranch out of his hands, the plaintiff would be unable to collect his judgment. A second execution was issued against him and was returned "no property found." If this is not sufficient proof of the insolvent condition of the debtor, it is difficult to determine what degree of proof should be required.

"A conveyance not supported by a valuable consideration, by a husband to his wife" (and this must be treated as such), "which is intended, or which tends to, defraud existing creditors of the husband, cannot be upheld against such creditors. If the husband be insolvent at the time of making such conveyance, or if, by reason of such conveyance, he is rendered unable to pay his existing debts, the wife's title will be deemed fraudulent and the property thus conveyed may be subjected to the payment of such debts."—*Gwynn v. Butler,* 17 Colo. 114.

As to the homestead entry of Mrs. Terrill, it is contended by appellant that it can be of no avail to Mrs. Terrill or her grantee Alley, for the reason that the title of Mrs. Terrill, having been taken in fraud of Terrill's creditors, was void as to them and was not the subject of a homestead exemption. That does not seem to be the rule in this state. As was said in *McPhee v. O'Rourke,* 10 Colo. 301:

"Besides, it has been held that when a conveyance to the wife is made or caused to be made by the husband, for the purpose of placing the home beyond the reach of his creditors, the wife is not precluded thereby from claiming the benefit of the homestead statute, even as against such creditors."

Admitting, however, that the entry of the homestead by Mrs. Terrill created a valid exemption in

her favor, even against the creditors of Terrill who had been defrauded by the transfer, this will not warrant the affirmance of the judgment. The property is confessedly worth a much greater amount than the $2,000.00 homestead exemption, and the statute provides that in such cases the property may be sold upon execution, the $2,000.00 paid to the homesteader, and the balance applied upon the judgment.—Section 2138, Mills' Ann. Stats.; *Barnett v. Knight,* 7 Colo. 375.

We now come to the question as to whether or not defendant Alley was a *bona fide* purchaser of the property without notice. Notwithstanding the fact that Alley gave a sufficient consideration for this property, if he had knowledge of the fraudulent character of the transaction by which his grantor obtained title to the property before the consideration was paid, the legal effect of such knowledge, so far as it affected the rights of Terrill's creditors, was the same as it would have been had such knowledge been acquired by Alley previous to the making of the contract of purchase.—*Baldwin, Jr., v. Sager,* 70 Ill. 503; *Arnholt v. Hartwig,* 73 Mo. 485; *Wormley v. Wormley,* 8 Wheat. 421; *Kitteridge v. Chapman,* 36 Ia. 348; *Warner v. Whittaker,* 6 Mich. 133; *Hunsinger v. Hofer,* 110 Ind. 391.

Alley's attorney had full knowledge of all the facts and circumstances surrounding the transaction by which Mrs. Terrill obtained the deed to the property; he had full knowledge of the existence of the judgment of appellant against David P. Terrill. Upon an examination of the abstract of title, this same knowledge, or information sufficient to put him upon his inquiry, was brought home to Alley. He conferred with his attorney concerning it and saw fit to accept the opinion of the attorney rather than to pursue his investigations further, although he

knew that the attorney was and had been the counsel for Mrs. Terrill. If he had pursued these investigations with reasonable skill and diligence, he would have ascertained that the consideration which Gray gave for the property was his unsecured promissory note, and the consideration which Gray received for the property when he conveyed to Mrs. Terrill was the same note, which was still in the hands of Mr. Terrill. He would also have discovered the existence of the judgment in favor of appellant. He would thus have learned that the conveyances leading from Terrill to Mrs. Terrill were without consideration and void as to creditors, or that the consideration for the conveyance from Gray to Mrs. Terrill was paid by Terrill, which resulted in Mrs. Terrill's holding the property subject to the rights of her husband's creditors; that in either event the transaction was fraudulent so far as it affected the creditors.

Aside from the knowledge possessed by the attorney, there were sufficient facts known to Alley before the purchase was consummated and the purchase price paid, to put him upon inquiry, and to charge him with knowledge of facts which he might have acquired if he had exerted himself to the degree of ordinary diligence and prudence in making inquiry.

"Courts of equity do not permit a party to claim any benefit from his own ignorance of facts which he could have learned by exercise of ordinary prudence and diligence."—*Balfour v. Parkinson*, 84 Fed. 860.

"A knowledge of facts sufficient to put a prudent person upon inquiry, is constructive notice of all facts which might have been ascertained by such inquiry or investigation."—*Reddin v. Dunn*, 2 Col. App. 518.

In *Riethmann v. Godsman,* 23 Colo. 208, the following language appears:

"It would seem, under the authority of these cases, that the purchaser for a valuable consideration without previous notice is not chargeable with constructive notice of the fraudulent intent of his vendor; but under these authorities, as well as under former decisions of this court (*Smith v. Jensen,* 13 Colo. 213; *Grimes v. Hill,* 15 Colo. 359; and *Steeleman v. Hoagland,* 19 Colo. 231), knowledge of circumstances may be equivalent to actual notice."

The presumption is that if a party affected by any fraudulent transaction might, with ordinary attention, have seasonably detected it, he seasonably had actual knowledge of it.—*DeMares v. Gilpin,* 15 Colo. 76; *Woodruff v. Williams,* 35 Colo. 28.

"Whatever is notice enough to put an interested party upon inquiry, is generally regarded as good notice of all those matters which an inquiry, prosecuted with reasonable diligence, would have disclosed."—*Woodruff v. Williams, supra.*

We have determined that Mrs. Terrill's title to the property was fraudulent as against Terrill's creditors. The record discloses that the attorney of Alley had knowledge of the circumstances making the transaction fraudulent. The record also discloses that Alley had knowledge of circumstances, which, if the diligent inquiry required by the law was made, would have resulted in actual knowledge of the facts constituting the fraud. In such event, as we have seen, the law presumes that he had actual notice of such fraud. One who, with notice of a prior fraud, purchases of the grantee in the fraudulent conveyance, takes the title subject to all of the infirmities with which it was affected in the hands of his grantor.—*Wilcoxen v. Morgan,* 2 Colo. 473.

If the law was otherwise, it would be such that

three conspirators might accomplish a fraud which would be impossible for two.—*Manhattan Co. v. Evertson,* 6 Paige 457.

We have already shown the circumstances, knowledge of which was brought home to Alley, and no man having knowledge of such signs of suspicion as these is at liberty to close his eyes, remain willfully blind to the facts, and by his negligence make himself the instrument of consummating a fraud against which the injured party might otherwise have protected himself. Counsel for defendant Alley, however, insists that the *lis pendens* was not sufficient to put Alley upon notice, because in the suit to which it referred the defendant David P. Terrill was not a party, and that, inasmuch as the cross-complaint was an action attacking a fraudulent conveyance, the conveyor was a necessary party. It is unnecessary for us to determine, at this time, as to whether or not David P. Terrill was a necessary party to the suit between Mrs. Terrill and Tibbetts. The fact remains that this *lis pendens,* the other entries in the abstract, the conveyances themselves, the knowledge of the attorney, and the circumstances surrounding the entire transaction were sufficient, as we have seen, to put Alley upon his notice and require him to make inquiry. Under the undisputed testimony in this case the judgment should have been for the plaintiff instead of the defendants, and it is therefore reversed and remanded, with instructions that if a sale is made of the property under plaintiff's judgment against Terrill, out of the proceeds of the sale there shall be paid to defendant Alley, the grantee of Mrs. Terrill, $2,000.00, being the amount of the homestead exemption, and the balance, if any, to be applied upon the judgment of plaintiff. *Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GODDARD concur.

After the foregoing opinion was filed, the appellant filed a motion that the remittitur to be issued should direct the entry of a judgment in accordance with the opinion of this court.

Appellee filed a counter-motion to the effect that if a sale of the property be made under appellant's execution, that he also have the amount of the mortgages which were standing and unpaid against the property at the time he purchased it, and which have been paid by him, determined to be superior liens to that of appellant.

There is nothing in the pleadings concerning these incumbrances, neither is there anything in the original briefs filed in this court relating to them. It appears by the abstract that the consideration paid by the appellee was in part the payment of certain incumbrances, but no issue was made of that matter in the trial court, and we can not, upon motion after the rendition of an opinion, determine the merits of a controversy which was not involved in, nor passed upon by, the trial court. Consequently, both motions will be disallowed and the case remanded to the district court for further proceedings as the parties may be advised.　　　　　　　　　*Motions denied.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GODDARD concur.