No. 10,231.

GWILLIM, ET AL. *v.* ASHER.

Decided January 9, 1922.   Rehearing denied March 6, 1922.

Action to set aside alleged fraudulent conveyances. Judgment for plaintiff.

*Affirmed.*

*On Application for Supersedeas.*

1.   PLEADING—*Fraudulent Conveyance—Cause of Action.* Allegations

of a complaint to set aside alleged fraudulent conveyances reviewed and held to state but one cause of action.

2. FRAUDULENT CONVEYANCES—*Husband and Wife.* The conveyance of real property by a husband to his wife with knowledge on her part of his fraudulent intent in so doing, is void as against his creditors.

3. PLEADING—*Conclusions.* Where sufficient facts are set out in a complaint to state a cause of action, allegations of conclusions may be treated as surplusage.

   Allegations of a complaint to set aside alleged fraudulent conveyances reviewed and held sufficient.

4. FRAUDULENT CONVEYANCES—*Creditors.* In an action to set aside alleged fraudulent conveyances, it is not necessary that the plaintiff should have been a creditor before the execution of the deeds, or should have been led into giving credit to the debtor under the belief that he owned the property in question.

5. *Record—Knowledge of Grantee.* By withholding deeds from record with knowledge of the fraudulent intent with which they were given, the grantees become active parties to the fraud.

6. APPEAL AND ERROR—*Evidence.* Evidence held sufficient to support the judgment for plaintiff in an action to set aside fraudulent conveyances.

7. FRAUDULENT CONVEYANCES—*Consideration.* A wholly inadequate consideration from a wife to her husband for the transfer of real property, will not defeat an action by a creditor to set aside the conveyance as fraudulent.

*Error to the District Court of El Paso County, Hon. Arthur Cornforth, Judge.*

Mr. SAMUEL H. KINSLEY, Mr. LEON H. SNYDER, for plaintiffs in error.

Mr. W. D. LOMBARD, Mr. C. B. HORN, Mr. WILLIS L. STRACKAN, Mr. EUGENE D. PESTON, for defendant in error.

*Department Two.*

MR. JUSTICE DENISON delivered the opinion of the court.

THE defendant in error a judgment creditor of R. J. Gwillim, brought suit against him, Janet, his wife, and Gwladys and Gwendolyn, his daughters, to set aside two certain conveyances of land from said R. J. Gwillim to his said relatives. The plaintiff had a decree and the wife and daughters bring error, and move for *supersedeas.*

They attack the complaint on two grounds: 1. That two causes are stated in one count; 2. That the facts stated are insufficient. They also claim that the evidence is insufficient to support the decree.

1. The complaint alleges that on December 1, 1919, plaintiff began suit against R. J. Gwillim, and on August 4, 1920, recovered a judgment therein; that December 1, 1919, Gwillim was owner of record of two parcels of real estate, viz., a ranch, and a house in Colorado Springs; that December 13, 1919, he filed or caused to be filed for record a deed of the ranch, dated November 9, 1917, from himself to Janet, his wife, and July 8, 1920, a deed of the house, dated September 24, 1918, from himself to his two daughters; that said deeds were without consideration and for the purpose of defrauding his creditors, particularly the plaintiff, and "were executed with a view to contracting future obligations" and "with fraudulent intent * * * to the contracting of future obligations" and left Gwillim without property to satisfy plaintiff's judgment and rendered him insolvent; that while said deeds remained unrecorded Gwillim retained the property and represented himself to be the sole owner; that he was and is the equitable owner and that said grantees hold in trust for him and that said trust was created with fraudulent intent on his part to the contracting of future obligations, which was known to his grantees.

We think this states but one cause of action. The substance of the pleading is clear though its expression is confused. Gwillim conveyed all his property to his wife and daughters to prevent plaintiff from collecting his judgment. That the conveyances were far apart in date and record and to different grantees is immaterial, since

it appears that they constitute one fraudulent transaction on the part of the grantor, and, because they knew his intent, on the part of the grantees also.

If we test this by Mr. Pomeroy's rule we get the same result; there is but one primary right in plaintiff and one corresponding duty in defendants, that is to hold Gwillim's property for application to his debts, and but one violation. thereof, that is the transfer by defendants with a common purpose to avoid that duty.  Pom. Rem. & Rem'l Rights, §§ 1, 452-459, 518-522.  *Farmers High Line Canal & Res. Co. v. Webber*, 70 Colo. 348, 201 Pac. 555.

2.  Does the complaint state a cause of action?  We think it does.

Plaintiffs in error say that since Gwillim is not shown to have been indebted at the date of the deed to the wife and since it left him solvent, with property in his name and control, that deed was valid and her knowledge of his fraudulent intent to incur future obligations and escape them by means of these deeds was immaterial and so no cause is stated against the wife.  We do not agree with this argument.  If the wife accepted a gift of land from her husband knowing such intent she had no equity in the land as against his creditors.  The effect of the allegations is to make the two deeds part of one fraudulent transaction.

True, as this court has held, a solvent man may give his wife property to protect her against his future misfortunes, but if the gift is part of a scheme to dispose of all his property by unrecorded deeds, and then to incur obligations and escape them, and she knows it, the case is different.

The allegation that the grantor was still the equitable owner may be a conclusion of law, though in this jurisdiction it would seem not (*Rice v. Bush, et al.*, 16 Colo. 484, 27 Pac. 720) ; but the alleged fraudulent purpose and acts show him to be the equitable owner so far as his creditor's rights are concerned.  So of the allegation of a secret trust.  The trust results from the conveyance with-

out consideration for a fraudulent purpose known to the grantee; sufficient facts, therefore, are alleged to support the legal conclusions and thus the allegations of such conclusions become surplusage. The fraudulent purpose vitiates the whole transaction; the doctrine of trust and equitable title is but equity's method of righting the wrong.

The allegation that the deeds were made "with a view to the contracting of future obligations" and "with fraudulent intent  *  *  *  to the contracting of future obligations" is not a conclusion of law, and, taken with the allegation that said deeds were made to defraud creditors, amounts to an allegation that the deeds were made with intent to incur and escape future obligations, and, though not as clear as might be, we think the complaint fairly construed is sufficient.

It is said that the complaint does not allege that Gwillim was the owner of the property but merely that he was the owner of record, and that that is not enough. If this position be correct, the complaint should be amended on affirmance of the judgment. The error is not of sufficient importance to justify us in reversing the case on that ground.

It is also claimed that the complaint does not definitely or sufficiently show the grantees' knowledge of the acts constituting Gwillim's fraud. We think a fair construction of the complaint is that it alleges such knowledge.

It is also claimed that the complaint is insufficient in that it does not show that the plaintiff was injured by the conduct of the defendants, since it does not show either that he became a creditor before the deeds were actually delivered or that he trusted Gwillim relying upon his apparent ownership of the property, being deceived by the fact that the deeds were not recorded.

We do not think that it is necessary that the plaintiff should have been a creditor before the execution of the deeds, or should have been led into giving credit to the debtor under the belief that he owned the property in ques-

tion, in order to create a cause of action, although those situations are the common ones in actions of this sort. If it is true that Gwillim, with the knowledge of his grantees, conveyed all his property to them with intent to defraud, and if this was done and the deeds withheld from record for the purpose of assuming obligations in the future and escaping those obligations by the subsequent record of these deeds, the case, we think, stands upon the same footing as if the deeds had been made at the date of their record.

By withholding the deeds from record with knowledge of the fraudulent intent the grantees became active parties to the fraud. *Stockgrowers Bank v. Newton,* 13 Colo. 245, 22 Pac. 444. Even though not deceived or misled to give credit, how does such a creditor's position differ from that of one whose credit antedates the deed but who does not show that he has granted credit especially upon the conveyed property? Such a creditor is not required to show that he was deceived; he is presumed to have granted credit on the general good standing of his debtor and the debtor is required to retain his property to meet the debt. Can it be that by secretly making conveyance before incurring the indebtedness he can alter that situation and accomplish what would have been unlawful if done at the time it was first made known by record? Can a court of equity sanction such a transaction?

We have considered this point as if the grantee's knowledge of the fraudulent purpose were necessary to the plaintiff's case but we are not to be understood so to hold. *Mulock v. Wilson,* 19 Colo. 296, 35 Pac. 532; *Gregory v. Filbeck,* 12 Colo. 379, 21 Pac. 489; *Gwynn v. Butler,* 17 Colo. 114, 28 Pac. 466; *Wilcoxen v. Morgan,* 2 Colo. 473.

3. It is also claimed that the evidence is insufficient. We cannot say so. We have examined all of the testimony from beginning to end. The evidence of Gwillim's fraudulent intent is strong and there is some evidence to support the charge of complicity with him by the other defendants.

It is urged that there was a sufficient consideration

for the conveyance to Mrs. Gwillim, because she assumed a mortgage of $3500; the value of the land conveyed to her, however, might, under the evidence have been found to be $12,000. *Regan v. Turner,* 69 Colo. 194, 193 Pac. 557.

It is further claimed that the daughters paid a valuable and adequate consideration for the property conveyed to them, which was a house and lot in Colorado Springs. Their claim is that they paid a mortgage of $600 and cancelled an indebtedness of about $400, the items of which were not forthcoming in the evidence, and agreed to pay $17.98 per month life insurance premiums on their father's life till his death for the benefit of their mother. The property, however, may have been found from the evidence to have been worth $3,000, and the agreement to pay the future life insurance premiums is, in effect, a transfer, *pro tanto,* of the margin of $2,000 to the mother. The implication in *National Bank of Commerce v. Appel Clothing Co. et al.,* 35 Colo. 149, 83 Pac. 965, 4 L. R. A. (N. S.) 456, 117 Am. St. Rep. 186, is, that in a case like the present, such a transaction would be unlawful.

Some objections were made to evidence, but they are not argued and we do not notice them.

*Supersedeas* denied and judgment affirmed.

MR. JUSTICE TELLER sitting for MR. CHIEF JUSTICE SCOTT and MR. JUSTICE WHITFORD concur.