## SMITH v. JENSEN ET AL.

1. REPLEVIN IN STATE COURT OF PROPERTY IN HANDS OF UNITED STATES MARSHAL.— Property in the hands of the United States marshal under process from the federal court may be replevied by action in the state court, consent of the federal court to sue the marshal having first been obtained.

2. WHEN DEMAND UNNECESSARY IN REPLEVIN.— Where property of one not the judgment debtor is seized upon attachment or execution, the seizure is wrongful in the first instance, and demand therefor prior to the commencement of suit is unnecessary.

3. EXPERT WITNESSES — JUDICIAL DISCRETION.— It is not an abuse of judicial discretion to permit one engaged in a specified mercantile business, familiar with its details and otherwise competent, to testify as an expert concerning the value of goods in that particular line.

4. FRAUDULENT COLLUSION — COMPETENT TESTIMONY TO ESTABLISH.— Declarations made by the vendor of goods privately to his wife, purporting to give statements of vendee or his agent concerning the transaction, are not competent for the purpose of showing fraudulent collusion of the vendee.

5. EVIDENCE — REJECTION OF CUMULATIVE TESTIMONY.— It is not error to reject testimony which is merely cumulative, and the reception of which could not have changed the result.

6. SAME — BURDEN OF PROOF OF FRAUDULENT INTENT.— Defendant pleading fraud in the title of plaintiff has the burden of proof on such issue. The fraudulent intent of the grantor is not alone sufficient to avoid a sale; the grantee must participate therein.

*Error to Superior Court of Denver.*

ON Saturday, April 12, 1884, Mrs. E. Grout was engaged in the hardware business at the city of Denver; that is, the same was being carried on in her name. John H. Grout, her husband, had entire control thereof, with full power and authority to sign her name, make contracts and otherwise transact the same.

At the date mentioned the agent of Sherman S. Jewett & Co., of Chicago, who were creditors of Mrs. Grout to the amount of $2,133.60, renewed his application, made a few days previous, for a settlement. Grout appealed to Bliss, of Jensen, Bliss & Co., for assistance, asking that the latter firm indorse Mrs. Grout's note to Jewett & Co. for the sum due them. Mr. Bliss took the matter under advisement until Monday morning following.

Mrs. Grout was also indebted to the firm of Jensen, Bliss & Co. for goods, and upon contingent liabilities on account of indorsement of negotiable paper, also on other claims, amounting to $2,650. On reflection Mr. Bliss concluded that the financial situation of the Grouts was perilous, and determined to take steps for the protection of Jensen, Bliss & Co. Accordingly, on Sunday, he instituted negotiations, which were consummated early Monday morning, by Mrs. Grout giving a bill of sale to Jensen, Bliss & Co. for the entire stock of goods.

Jensen, Bliss & Co. immediately took possession of the property, changed the sign and proceeded to carry on the business. When the agent of Jewett & Co. discovered what had been done he caused a writ of attachment to issue in behalf of that firm from the federal court, and had the property attached as belonging to Mrs. Grout. Application was made by Jensen, Bliss & Co. to the federal court for leave to sue its marshal, Walter A. Smith, in the state court, which leave was granted. The present suit was then instituted in replevin against the marshal. A jury being waived, the replevin action was tried

to the court, who found in favor of the plaintiff, and rendered judgment accordingly. To reverse this judgment the present writ of error was sued out.

The foregoing comprise all the facts that need be stated. Other matters necessary to a correct understanding of the opinion will be found therein.

Messrs. PATTERSON & THOMAS, for plaintiff in error.

Mr. E. O. WOLCOTT, for defendants in error.

CHIEF JUSTICE HELM delivered the opinion of the court.

1. The first legal proposition urged upon this appeal is that the superior court had no jurisdiction to issue a writ of replevin against the United States marshal, and therefore that its entire proceedings in the premises were void. This subject has already been before us several times, and further discussion thereof is needless. Since permission from the federal court to bring the suit was first asked and obtained, the principle of comity, or of "comity and necessity," involved was satisfied, and this objection to the jurisdiction of the state court must be overruled. *Smith v. Bauer,* 9 Colo. 380; *Mitchell v. Smith, ante,* p. 170.

2. The property was taken from the possession of Jensen, Bliss & Co. under process against the Grouts; hence the seizure was wrongful in the first instance, and demand therefor prior to the commencement of suit was unnecessary. Wells, Rep. § 369.

3. There was no abuse of its discretion by the court in permitting Roberts to testify as an expert witness concerning the value of the goods in controversy. He had been engaged in the hardware business at Denver for fifteen years, and was familiar with its details. These, coupled with other facts disclosed by his examination, rendered competent his opinion upon the subject.

4. A fatal error was not committed in rejecting the offers of defendant to prove by Mr. and Mrs. Grout the

former's report, made privately to the latter, of a certain conversation between himself and Bliss.

It is impossible to read the testimony of these two witnesses without being forced to the conclusion that Mr. Grout was the real principal throughout the transaction under consideration. His wife was a mere passive instrument in his hands. The business was evidently carried on by him in her name because, for some reason, he did not dare to do so in his own. She paid no attention to it, and submissively did whatever he directed her to do. She had personally no negotiations with Bliss in regard to the matter, and signed the bill of sale without comprehending its contents. The record shows throughout that Grout was in reality acting for himself, and not as the agent of another.

One of the material questions, therefore, was, With what intent did Grout cause the bill of sale to be executed, and deliver possession thereunder? If his purpose was fraudulent, upon showing collusion on the part of Bliss the sale would be held void as to creditors, even though Mrs. Grout did not participate in the fraudulent intent, and had no notice or knowledge whatever of its existence.

The conversation in question was not competent to prove collusion or knowledge on the part of Bliss, or even his declarations upon the subject. As to him, or Jansen, Bliss & Co., the grantee, alone, it was the most vicious kind of hearsay. If admissible at all,— a question upon which we do not pass,— it must have been as the prior declarations of the grantor, and solely for the purpose of establishing the grantor's bad faith. But the proofs offered and excluded referred to a specific conversation between Grout and Bliss. Grout detailed this conversation to the court minutely and in full. He was questioned and cross-questioned upon it in the most thorough and searching manner, and gave his version with the utmost deliberation. Hence his account relat-

ing thereto, given privately to his wife, if admissible under the rule of evidence above mentioned, would have been merely cumulative. A repetition, in this way, of substantially what was already before the court, would hardly have rendered clearer his purpose in making the sale, even if the *mala fides* of such purpose remained in doubt. We are satisfied that the ruling upon these offers did not constitute a fatal error.

Mr. and Mrs. Grout were not unwilling witnesses. They exhibited no hesitancy in giving testimony favorable to defendant, though it tended to show their own bad faith, and to stultify their conduct in the premises.

5. But the main controversy in this case is as to the sufficiency of the evidence to invalidate the transfer to Jensen, Bliss & Co. upon the ground of fraud. Was that contract entered into, and did the transaction take place with intent, by both parties, to hinder, delay or defraud the creditors of Mrs. Grout, or Sherman S. Jewett & Co., one of those creditors?

Certain alleged facts and circumstances are relied upon by plaintiff in error as establishing such intent. The entire stock of goods was transferred to a single creditor, leaving all other claims wholly unsatisfied. Bliss took advantage of the knowledge that Jewett & Co.'s agent was pressing for a settlement, and that the affairs of the Grouts were consequently in a hazardous condition. He first procured a postponement of definite action, and then proceeded on Sunday to negotiate for the alleged sale, which was consummated early Monday morning. The absurd and suspicious fiction of giving Mrs. Grout the check of Jensen, Bliss & Co. for the amount represented by the bill of sale was resorted to, the check being immediately indorsed and redelivered to Bliss. An invoice taken by Mr. Grout shortly previous to the transaction showed an alleged valuation of $6,319.08, or upwards of $1,000 more than twice the amount of the Grout indebtedness to Jensen, Bliss & Co. Mr. Grout and certain other wit-

nesses testify to conversations with Bliss at or about the time of the alleged sale in which the latter intimated or admitted, as it is claimed, that the sale was made for the purpose of defeating collection of their demand by Sherman S. Jewett & Co., also that Mrs. Grout might receive some other or further benefit or advantage through the transaction.

On the other hand, the evidence clearly shows that there was a *bona fide* indebtedness to Jensen, Bliss & Co. of $2,650, the consideration mentioned in the bill of sale; only $209.24 of the amount being controverted by the Grouts. A portion of this indebtedness, it is true, might be termed conditional, being in the form of indorsements upon negotiable paper. But it was strongly probable at the time of the sale that the company would be obliged to take up these notes, and, as a matter of fact, they did so shortly after. A second invoice of the goods, taken a few days subsequent to the sale, gave a valuation of $3,280.82. The stock had been purchased at different times, some of it had been on hand for an extended period, and it was known in mercantile parlance as a " broken stock." These and other existing causes tended to reduce its wholesale value. Bliss emphatically denies the declarations imputed to him, introduced to show a fraudulent purpose on his part in connection with the transfer, and claims that he pursued the course he did with the sole intent, and for the sole purpose, of protecting the firm he represented against loss on account of the Grout indebtedness.

The transaction as thus disclosed is not free from suspicion. Some of the *indicia* from which fraud is often inferred are present. But upon a review of the entire record we are not prepared to say that the conduct of Bliss is inconsistent with the theory that he did not participate in the fraudulent purpose of the Grouts, if such purpose actually existed at the time the sale was made. He may have honestly striven simply to procure that

precedence for the firm he represented, which, in a race between creditors, the law permits. His subsequent conduct is in accord with this view. As the agent of Jensen, Bliss & Co., he refused to recognize or pay the claims of certain other local creditors, and persistently declined to acknowledge any reserved or contingent interest of the Grouts in the goods, or any part thereof.

The burden was upon defendant to show, by a preponderance of evidence, the fraudulent transfer as alleged. To invalidate the transaction upon this ground, proof establishing an intent by the grantor to hinder, delay or defraud his creditors was, alone, not sufficient. Satisfactory evidence of collusion in the fraudulent intent by Bliss, the grantee's agent, was necessary. The court below saw the witnesses, and was therefore more competent than we are to judge of their credibility, and pass upon the material conflicts in their testimony. We shall decline to overrule its finding in the premises. The judgment is affirmed.

*Affirmed.*

MR. JUSTICE ELLIOTT. 1 concur in the foregoing opinion except as to the jurisdiction of the superior court over the property in the custody of the United States marshal under process from the federal court. As to that question, my views are expressed in the case of *Mitchell v. Smith, ante,* p. 170, and need not be repeated.