HILL v. CORCORAN.

1. REPLEVYING GOODS FROM CUSTODY OF UNITED STATES MARSHAL.—
   Goods in the custody of a United States marshal, under attachment
   issued from a federal court, may be replevied by suit in a state court,
   by consent of the federal court. Adhering to *Mitchell v. Smith*, 13
   Colo. 170.
2. INCOMPETENCY OF JUROR.— Where a juror in an action of replevin is
   shown to be a clerk in the employ of a firm on intimate relations
   with one of the parties in interest, and which became their bonds-
   men upon the instrument which secured them in possession of the
   property in controversy, he is properly excused.
3. WHAT IS NOT SUFFICIENT GROUND FOR NEW TRIAL.— The fact that
   during the trial one of the jurors was accused of a grave crime, and
   employed one of the counsel for the successful party to defend him,
   is not ground for a new trial, where it does not appear that the juror
   was rendered incompetent or failed to give due attention to the tes-
   timony and arguments.
4. WHEN VERDICT WILL NOT BE DISTURBED FOR IMPROPER REMARK
   OF JUDGE.— An improper remark by the trial judge, made to the
   counsel of appellant during the selection of the jury, and tending to
   the latter's discredit, does not warrant the reversal of the judgment
   unless it is reasonably certain that the appellant's interests were
   prejudiced thereby, especially where the remark itself indicates no
   predisposition of the court concerning the controversy.
5. NOT ERROR TO REFUSE INSTRUCTIONS NOT PREDICATED ON EVIDENCE.
   To justify an instruction that inadequacy of price is for the consid-
   eration of the jury in determining the fairness of a sale by a failing
   debtor, there must be proof of the real value of the goods, and this
   is not supplied by merely comparing the price with the original cost
   of the goods.

*Appeal from Superior Court of Denver.*

THIS was an action of replevin brought by the appellee
Corcoran against Hill to recover the possession of certain
property alleged to have been unlawfully taken, with dam-
ages for the detention. Hill defended and justified the tak-
ing under mesne processes of attachment issued out of the
federal court in Colorado in two cases, in one of which
Cousins and others were plaintiffs and Louis Witkowski
was defendant, and in the other of which the Bay State Shoe
& Leather Company were plaintiffs and Witkowski was

likewise defendant.   The defendant not only contested the jurisdiction of the court over him in this suit, but further defended on the ground that the sale between Witkowski and Corcoran, under which Corcoran claimed title, was fraudulent as against creditors, and consequently that the transfer was indefensible.   Issue was taken by the plaintiff Corcoran upon the various matters set up in the answer, and he justified his suit and attempted to sustain the jurisdiction of the court by setting up leave of the federal court to institute the particular suit by an order duly entered for the purpose.   The replication was demurred to, as to so much of it as set up the authority to institute this suit under leave granted, on the theory that the federal court was without jurisdiction to grant the leave, and that under the order, or by reason of it, or under any circumstances, the state court could acquire no jurisdiction because the property had been seized by the marshal.   The demurrer was overruled and the cause tried upon the main issue as to the character of the sale to Corcoran.   No evidence of the value of the goods sold to Corcoran was given save that which came out in the history of the sale to him by Witkowski, and the inventory made at the time.   Little evidence was given by the defendant which tended to establish the fraudulent character of the sale, nor did the defendant attempt to prove the extent of Witkowski's indebtedness or Corcoran's knowledge of his situation.   Whatever was proved upon that subject was of an inferential character and derived almost wholly from the general history of the sale.   The jury found upon this issue for the plaintiff.   The defendant appeals.

Messrs. JOSEPH N. BAXTER and M. B. CARPENTER, for appellant.

Messrs. PATTERSON & THOMAS, for appellee.

BISSELL, C.   Among the many errors urged on behalf of the appellant, that which is most extensively argued is

based upon the action of the court in entertaining jurisdiction of the suit. This question was supposed to have been set at rest by the decisions of this court in the cases of *Smith v. Bauer*, 9 Colo. 380; *Weil v. Smith*, 11 Colo. 310; *Mitchell v. Smith*, 13 Colo. 170; and *Smith v. Jensen*, 13 Colo. 213.

In view of the constant and repeated assaults upon the principle involved in these decisions, and of the later adjudications of the supreme court of the United States, particularly that of *Covell v. Heyman*, 111 U. S. 176, it has been deemed best to further elucidate and explain this court's position on the question. This is ample justification for the labor and space essential to what may be taken as an end of the controversy, until the highest tribunal of the nation shall declare its opinion on the very matter in dispute. The language used by that very distinguished court in the case last referred to, as in all the cases following *Freeman v. Howe*, in 24 How. 450, affords some apparent warrant for the contention of appellant's counsel. When properly understood and explained, however, none of the federal authorities, nor any of the arguments urged against this court's position, compel any modification of the doctrine already announced. It is one of the fundamentals of the law, that, to entertain and decide a controversy between parties, it is essential that the court which tries the case shall have jurisdiction of both the subject-matter and of parties. The postulate that wherever there is a want of jurisdiction, either as to the person or as to the subject-matter, the judgment which it may render is indefensible, is without exception. It has thus become common to assert that, wherever a matter can be termed "jurisdictional," it is beyond the power of the court to increase or diminish its powers at pleasure concerning that matter.

With regard to the subject-matter of this replevin suit, the action of the federal court concerning it cannot be said, except in a special and very restricted sense, to be jurisdictional. To permit the *res* to be seized on the process of

another court, organized and exercising its judicial functions under a different sovereignty, may, without doing violence to legal terms or juridical definition, be termed an "invasion" of the jurisdiction of the court which has taken the property. But in the sense, and in the broad inclusion of meaning, in which that word "jurisdiction" is by the courts and lawyers used, understood and defined, the word is not accurately applied, and has led to much uncertainty and confusion. In the main action in which the mesne process issued, the court has jurisdiction, assuming the action to have been rightly brought, of both parties and subject-matter. If, however, B.'s property be taken on the writ issued and executed in C.'s suit against A., the court, as to the essentials of the controversy arising from the seizure, has jurisdiction neither of the person nor of the subject-matter. B. is neither privy nor party. If his property be taken and sold he is neither bound nor concluded by either process, judgment or sale. He has not lost his property right, nor is he without remedy. The definite thing may have disappeared, and he may be restricted in the remedies open to him to enforce his rights and redress his wrongs. But of him, and of the subject-matter of any suit which he may lawfully institute, the court which seized his property has no jurisdiction without the concurrence of other facts to bring the matter within the scope of federal cognizance.

This demonstrates the inaccuracy of the application of the word "jurisdiction" as a designation of the primary and fundamental difficulty. It is only the limited possessory element of jurisdiction which is either concerned or involved. The general trouble has arisen from the insurmountable obstacle to absolutely accurate and perfect judicial declaration. Unless the precise question be raised by the record, it is most liable to lie hidden beyond the range of mental vision, and be discoverable only as the land is when the ship has sailed far enough in its direction. The exact question herein has never been presented to the supreme court of the United States, nor has it ever had occa-

sion to declare its position on this phase of it. The position of this court being unassailable, and supported by every consideration of comity, necessity and convenience, as well as by sound and convincing legal argumentation founded on well understood and recognized rules of judicial definition and interpretation, it may very properly be assumed to be in harmony with the probable future declarations of that court.

The whole question is one of the avoidance of a conflict in the exercise of the powers of two courts acting under authority conferred by different sovereignties, but exercised within the same general territorial limits. This is plain to be seen when the subject is considered both with reference to the purposes for which the authority is claimed, and the absence of right on the part of the parties really interested to assert that the control of the federal court is exclusive. The object is not to preserve the property or its fruits to answer the judgment, for neither can ultimately be devoted to any such purpose, if the process has been laid upon property to which the defendant in the process had no title. This is apparent because the officer may be sued in a state court in trespass for the unlawful taking, or he and his bondsmen may in like manner be sued upon his official bond and made to respond for the unlawful conversion. This is abundantly settled by the same high court, which declares that property taken under its process may not be interfered with so long as it is within the scope and power of the writ. *Lammon v. Feusier*, 111 U. S. 17; *Buck v. Colbath*, 3 Wall. 334.

The real owner is not precluded from asserting his title as against the marshal in a tribunal of his own selection. It is only that the goods are temporarily and incidentally in the custody of the court, and a stranger may not lay hold of them. Under these circumstances it is not easy to see why the federal court may not by order permit the *res*, the specific thing, to be pursued. The privilege does not at all belong to the officer, neither is it his right. He could

not justify on any grounds personal to himself. The juris-
diction of the federal court is dependent on citizenship or
on some other statutory consideration. If both be lacking
there is no personal right in the officer. When he is per-
mitted to set up the defense he simply asserts the power
and authority of the court. It is only because the court's
rights and functions are involved that the plea is permitted
to him. That it is not a personal privilege is evident from
those decisions which permit the damages for the taking to
be recovered either of him or his bondsmen. If it were a
personal privilege, or his right and privilege as an officer,
the defense would always be available, and he could at all
times and in all courts insist upon his right to litigate in
the federal forum, whether sued in trespass or on his bond,
or in replevin. That he may insist upon it in replevin is
solely because the property is in the custody of the federal
court.

The plaintiff in the action in which process issued is
equally without right to demand that the replevin suit be
heard in the federal tribunal. He is without any choice in
the premises as to the forum in which that controversy
shall be settled. The original suit does not enter into the
solution of that problem. The jurisdiction of the court
over the original subject-matter and controversy is neither
assumed nor cast off at its pleasure. It always remains
when justly invoked and set into active operation. To say
that it may by order release property which has been seized
under its process either to answer a judgment which may
or may not be recovered, or to satisfy one already rendered,
when the particular property is alleged not to be answer-
able to the judgment, and permit that question to be liti-
gated in a court otherwise of competent jurisdiction, is not
to assume a power in the court to refuse or assert a juris-
diction over the subject-matter of a controversy represented
by citizens who have a right to be heard in that forum.
The officer is without personal right to be heard, for he
may elsewhere be made to answer for his illegal taking.

The party is without right because he neither has the property nor can he be heard to plead in any suit against the officer.

The plea of levy under the process of the federal court is then neither a personal plea nor one incidental to the office of marshal, but the setting up of a fact, to wit, the antecedent acquisition of possession of the property by another court foreign to the tribunal in which the later action has been instituted. It is the fact of possession solely, which, if at all, permits the jurisdiction to be said to attach. It does not spring from the existence of the main suit, nor grow out of the *personnel* of the officer, but the circumstance that the officer of a particular court under its process has seized the goods by construction brings them within the jurisdiction of that tribunal; and the possession, save by the exercise of a wise and well-directed comity, may not be disturbed. The ultimate judgment in the action wherein the mesne process was issued, and the sale of the property seized under final execution, in no manner affects the question of title to the property. The *res*, the specific thing, may be lost or transferred, but the owner may still recover of the officer for the taking, and neither the seizure and sale nor the judgment of that court is of any moment in determining the matter of the ownership.

When then it is asserted that the question is one of jurisdiction it is only true in a limited and special sense. The property is in the hands of the court, and consequently is accurately said to have passed within its jurisdiction. The question of title to the property seized is neither involved in the principal suit nor at all affected by the fact of seizure. A particular remedy for the establishment of that title is unavailable, because it invades the court's possession. All the court surrenders, when it enters an order permitting suit to be instituted against its officer, is that possession and the right to it. It neither assumes jurisdiction of the subject-matter of any suit, nor does it reject jurisdiction of any controversy which has been initiated in

it.   The parties to the original suit remain unaffected by
the order, for they never had any right to have the ques-
tion of title to B.'s property investigated in the suit which
has been brought by A. against C.   The officer has lost
nothing, because he might always be sued in the foreign
tribunal for his illegal acts.  · The court has simply said the
possession is so far yielded that the matter of ownership
may be litigated in the state court.   That the power exists
to make the order appears unquestionable.   It is conceded
that there is no statutory grant of such authority, but it is
the incidental and inherent right existing in every court to
control, direct and govern its own process, to maintain its
authority over property which has been seized under it, or
relinquish it at its pleasure, so long as no right to contest
the surrender inures to any suitor or citizen.   As said by
Mr. Justice Miller in *Buck v. Colbath, supra:*   " It is only
while the property is in the possession of the court, either
actually or constructively, that the court is bound or pro-
fesses to protect that possession from the process of other
courts.   Whenever the litigation is ended, or the possession
of the officer or court is discharged, other courts are at
liberty to deal with it according to the rights of the parties
before them, whether those rights require them to take
possession of the property or not."

The supreme court has undoubtedly declared the law to
be that the stranger whose property has been seized may,
in their court, assert and defend his title as against the
process.   No other position would be consistent either with
the rights of citizens or the exercise of a proper authority
by the court.   The position and rule laid down by the su-
preme court of the United States are not at all in conflict
with the principles which this court has declared.   Both
rules may well be permitted to stand, and the comity and
harmony which has always prevailed, and been asserted by
both tribunals, will be the better conserved and protected.
The court did not err in overruling the demurrer to the
replication.

The remaining errors assigned require no extended consideration. Two of them may be grouped, since they grow out of the excusing of one of the jurors from service and the remark made by the court incidentally, when he was let off from service on the panel. It is quite true that, when the court commits an error in excusing a juror who is challenged for cause, that error is the subject of review in this court; and when it is plain to be seen that thereby a party has been prejudiced, the cause will be reversed. This cause, however, does not seem to be brought very clearly within that rule. The record as it is brought up fails to show at what time, and under what circumstances, the juror Light was excused from service, save that it appears that, during the progress of the examination, counsel for appellee submitted to the court "that it was a question whether the juror under the circumstances ought to be admitted into the panel." No direct challenge was made for cause, nor did the court rule directly upon the proposition of a challenge as made by the challenging party. The judge proceeded to further examine the juror, and upon the conclusion of his questions excused him; and thereto the appellee saved an exception. But for the remark of counsel no objection to the excuse of the juror could have been taken, and such exercise of the court's discretion would not have been available on error. *Mooney v. People*, 7 Colo. 218.

Were it necessary, the court would be inclined to hold that there was no sustaining of a challenge for cause upon which error could be based; but it is evident that the juror was so circumstanced in his situation and in his relations that the court properly exercised the discretion reposed in it when it excused him from the panel. He was in the employ of a firm, apparently on the most excellent terms and intimate relations with one of the parties in interest. The firm became their bondsmen upon the instrument which secured them in the possession of the property in the original controversy. It is apparent that one side of the case at least might easily have been the subject of enlarged dis-

cussion in the house wherein the juror was a clerk, and that, from the atmosphere, he was liable to imbibe notions and prejudices which would render him, not perhaps an incompetent juror, but one who would not be thoroughly impartial as between the parties. At the time that the juror was excused and the exception was saved, a remark was made by the judge which had a tendency to cast some discredit upon the action of counsel in saving the exception. There is a dispute between the attorneys for the respective parties in this court as to the regularity of the bill of exceptions and the accuracy of its contents. The remark which was excepted to was written in the bill apparently after its preparation by the stenographer, and it has since been crossed out by pencil so as to leave it uncertain whether legitimately it is a part of the record. This court will not assume the task of determining what the fact is, and weighing the evidence furnished by counsel *pro* and *con* upon the subject. If the appellant desired to predicate error upon that proposition, it was his duty, after the bill of exceptions exhibiting the erasure was filed in this court, to suggest a diminution of the record, and obtain leave to file a supplemental bill showing the action of the court in the premises. It cannot be expected that this court will determine matters which are not properly determinable from the record before it. It is perhaps proper to say, however, that, while the remark is of a slightly unjudicial character, it is not of the sort for which, under the showing made here, a case would be reversed. It is not every slight departure from the strictest judicial propriety which will warrant the setting aside of the finding of a jury. It must be clear, or reasonably so, at least, that the remark would probably tend to the prejudice of the party against whom it was made. That is not clear under the circumstances here, for there is no showing as to the number of jurors in the box who remained there to render the verdict after the remark was made, nor does the remark itself tend to indicate any predisposition of the court regarding the controversy.

The instructions which were asked by appellant and refused were rightly denied. It is quite within the province of a *nisi prius* tribunal to reject the instructions in the form asked by counsel, and to express the law upon the subjects covered in their own fashion and in their own phraseology. The practice perhaps is more honored in the breach than in the observance; but wherever it is done, and the subjects embraced within the instructions asked by counsel are included in the court's own admonitions to the jury, there is no cause for complaint. In this case the instructions, which it would have been error to refuse had they not been covered, were fully included within the court's statement of the law. As to the others, it may be said that the case lacks the evidence upon which they can be properly predicated. It is true that an inadequacy of price is always a matter for the consideration of the jury in determining the fairness of a sale, as between the purchaser and a failing debtor; but, to apply it to any given controversy, it is incumbent upon the contestant to make proof of the real value and the proper price of the goods that were sold. The only way in which that was done in this case was by comparing the price paid by the purchaser with the original cost of the goods. This is not such a determining of value as necessitates the giving of that instruction.

There is but one other error which need be considered, and this grows out of the overruling of a motion for a new trial, based upon an affidavit substantially setting forth that, during the trial, one of the jurors in the panel was accused of a grave crime, and that he employed one of the counsel for the other side to defend him against the charge. There was nothing in the proof offered upon this matter which tended to show that the juror was thereby rendered incompetent, or that he failed to give due and proper attention to the testimony as it was adduced, and to the arguments of counsel. Even under great strain and pressure of misfortune, or other circumstances, the mental operations may, for collateral purposes, be as clear and precise,

and, possibly, more accurate, than when free from pressure. These facts are not of themselves enough to warrant setting aside a verdict which is abundantly sustained by the testimony.

There are no other errors assigned which need consideration. The judgment should.be affirmed.

RICHMOND and REED, CC., concur.

PER CURIAM. For the reasons stated in the foregoing opinion the judgment of the court below is affirmed.

*Affirmed.*

MR. JUSTICE ELLIOTT (*dissenting*). I cannot concur in the foregoing opinion, for the reasons stated in my dissenting opinion in the case of *Mitchell v. Smith*, 13 Colo. 172.